January Term,<br>1862.<br><br>DAVIDSON<br>v.<br>VAN PELT.

---

## DAVIDSON VS. VAN PELT.

| | |
|---|---|
| 15 | 341 |
| 116 | ³542 |

A agreed with B to convey to him the undivided half of certain land, for a stipulated price, subject to a contract previously made with C, to convey to her an undivided third of the same land, on her making certain payments, but which contract was to be void if she failed to pay as agreed. *Held*, that A did not stand in the relation of a trustee for B, so as to preclude him from buying for his own benefit the interest of C under her contract.

A having bought C's interest under the contract before any default by her, B was entitled to have an undivided *third* only of the land, and of course was not bound to take more than one third of it.

Where the vendor of land binds himself to make a deed when the vendee requires it, and, after the whole of the purchase money falls due, the vendee offers to pay it and demands a deed, the vendor cannot maintain an action for the money without having tendered a proper conveyance.

Where the vendor agrees to execute a good and sufficient warranty deed, the vendee is entitled to a warranty deed of the land, free from all incumbrances. That is the kind of conveyance called for by the contract.

ERROR to the Circuit Court for *Racine* County.

The complaint in this case, which was filed in September, 1860, stated, that on the 13th of March, 1856, one McClurg and the defendant, *Van Pelt*, entered into an agreement under their seals, by which, after reciting that McClurg had purchased of one Sage certain lots in the city of Racine, and had taken a deed therefor from him for the equal benefit of said McClurg and *Van Pelt*, each owning one undivided half thereof, the said McClurg agreed with *Van Pelt* to deliver to him a good and sufficient warranty deed of an undivided half of said lots when he should require it; and said *Van Pelt* agreed to pay said McClurg $5,000, being half of the whole amount of the purchase money of said lots, as follows: $250 at the execution of the contract, the receipt of which was acknowledged therein; $500, with interest, in six months from the date of the contract; and the balance of said $5000, in four instalments of $1062.50 each, payable respectively one, two, three and four years from date, with interest upon the whole sum unpaid, payable annually; but it was recited therein, that said agreement was subject only to another agreement of the same date, made by said McClurg with Ann E. Hurlbut, on the fulfillment of which by her she would be entitled to an undivided third part of said lots, and McClurg and *Van Pelt* would each be entitled to an undivided third, but that a default of said Ann in her agreement, should render the same void, and the agreement between McClurg and *Van Pelt* should then remain in full force. The complaint averred that Ann E. Hurlbut had failed to fulfill the agreement between herself and McClurg; that said McClurg had duly performed all the covenants of

said first mentioned agreement on his part to be performed;
that the defendant had refused to pay the instalments men-
tioned in said agreement; and that the sum of $4741.71, with
interest from &c., remained unpaid, and that the plaintiff was
the lawful assignee and owner of said agreement, and enti·
tled to recover said sum of money.

The answer alleged that said McClurg, before he assigned
his interest in said agreement to the plaintiff, became the as-
signee and owner of the interest of Ann E. Hurlbut, in the
agreement between herself and him, and thereby became in-
terested in said lots to the extent of two thirds thereof, and
the interest of the defendant therein was reduced to one third,
and the payments to be made by him to McClurg, pursuant to
said agreement, were reduced in the same proportion; that in
addition to the $250 paid at the date of the contract, the de-
fendant had paid to McClurg, on the 13th of September, 1856,
$500, and the interest which had accrued thereon; on the
13th of March, 1857, $906.67, being the principal and in-
terest due at that date; and on the 22d of March, 1858, the
sum of $857.08 being the interest and the principal due on
the 13th of that month; which three payments last mention-
ed were made after said McClurg had become the owner of
the interest of said Ann E. in said contract, and were
accepted by him as full payments of the amounts then
due to him from the defendant on said agreement; that
there remained unpaid on said agreement the sum of $1416
.67 and interest thereon, being the two payments which, by
the terms of said agreement, became due March 13, 1859,
and March 13, 1860, reduced as aforesaid; that when said
last mentioned instalments respectively became due, he was,
and still is ready, and has repeatedly offered, to pay the same
to said McClurg, whenever he should execute to the defend-
ant a good and sufficient warranty deed of one undivided
third of said lots; that said McClurg has neglected to exe-
cute such deed; that the said lots are encumbered by a
mortgage for over five thousand dollars, given by said Mc-
Clurg to Sage, and by unsatisfied judgments against Mc-
Clurg for a large amount; and that the said McClurg and
the plaintiff are unable to convey to the defendant an undi-

vided third of said lots " by a good and sufficient warranty deed." The plaintiff replied in denial of the new matter alleged in the answer. On the trial, the plaintiff gave in evidence the agreement of March 13, 1856, between McClurg and *Van Pelt,* and also the agreement between Mrs. Hurlbut and McClurg, which was in substance, that she or her assignees would pay to said McClurg $500 within six months, and four instalments of $708.33 each, in one, two, three and four years from date, with interest on the whole sum due, payable annually; and the said McClurg would, on the payment of said sums, convey to her or her assignees one undivided third of the lots before mentioned, by a good and sufficient warranty deed; but it was also stipulated in said agreement, that in case of the failure of Mrs. Hurlbut to make either of said payments, McClurg should have the right to declare the contract forfeited, and retain all payments which might have been made upon it.

Mr. McClurg, as a witness on the part of the plaintiff, testified that Mrs. Hurlbut, on the 13th of September, 1856, paid $500 on her agreement with him, which was equally divided between him and *Van Pelt*; that she never made any other payment; that a few days before the 13th of March, 1857, her husband called on the witness and said she desired to get rid of the contract, on account of her inability to make the next payment, and that *Van Pelt* had been trying to make an arrangement with them to get up the contract, but had failed to do so; that the defendant had previously told the witness that he had been trying to negotiate with Hurlbut and his wife to get up the contract, but had failed, and desired the witness to try and bring it about; that in pursuance of such request, the witness completed an arrangement with Mrs. Hurlbut to take up the contract, and in consideration thereof, the witness paid back to Mrs. Hurlbut the $500 she had already paid, and conveyed to her a house and lot worth $750, and the contract was surrendered up to him; that his purchase of the interest of Mrs. Hurlbut was intended for the benefit of the defendant as well as himself; that the witness had no conversation with Mr. Sage with reference to the purchase of the lots of him, but his

knowledge as to that contract of purchase was derived from the defendant and Mr. Hurlbut, at the time he was requested by them to execute the papers, and that the contract between witness and defendant, the deed [from Sage] and mortgage [to Sage], were executed at the same time; that upon the purchase of the lots from Mr. Sage, the defendant went into possession of them and occupied them for about a year, and then the witness occupied them from eight months to a year, and the defendant then leased them to one Slauson, who had continued to occupy them since the spring of 1859, paying rent to the defendant, who had not accounted to witness for any part of it.

On cross-examination, he testified that the $500 indorsed on Mrs. Hurlbut's contract, was divided and arranged between the witness and the defendant when they made the next payment on the mortgage to Sage, each paying half of such payment. Here the attention of the witness was called by the defendant to an unsigned writing on the back of Mrs. Hurlbut's contract, which he admitted was in his hand-writing, and it was read in evidence by the defendant, being as follows: "Know all men that I, Ann Eliza Hurlbut, in consideration of $1000 to me in hand paid by Alexander McClurg, the receipt whereof is hereby acknowledged, have sold and assigned, and by these presents do sell and assign to the said Alexander McClurg, the within instrument in writing, and all my right title and interest in the piece or parcel of land conveyed therein. In witness whereof, I have hereunto set my hand and seal this 12th day of March, 1857." The witness testified also to the execution of the following receipts indorsed on the contract between himself and *Van Pelt*: "Received September 13th, 1856, the payment due this date, of $500, and the interest on the same. A. McClurg." "Received March 13, 1857, $906.67, being the amount of principal and interest due on the within this day. A. McClurg." "Received March 22, 1858, the sum of 148.75, the interest on the principal due 13th inst. A. McClurg." "Received from *W. T. Van Pelt* the payment of $708.33, due the 13th of March, 1858. A. McClurg."

The plaintiff then proved an assignment in writing from

McClurg to himself of the demand in suit, dated August 10, 1861, and that on the 3rd of September, 1860, a deed was tendered to the defendant, executed and acknowledged by McClurg and wife, for the undivided half of said lots, which deed the defendant refused to accept. This deed (which was offered in evidence) contained the usual covenants of seizin, for quiet enjoyment, and general warranty, but no covenant against *incumbrances.*

S. S. Hurlbut, a witness for the defendant, then testified, "that the assignment written on the back of the contract of Mrs. Hurlbut, was delivered to him by McClurg to procure to it the signature of Mrs. Hurlbut, and had been mislaid and forgotten until a few days previous to the trial, when he found it among the papers ; that he did not remember whether the defendant was present or not at the time the agreement was made for the transfer of Mrs. Hurlbut's contract ; that the defendant had made him an offer for Mrs. Hurlbut's contract before the sale of it to McClurg ; that Mrs. Hurlbut could have made the second payment on the contract, but preferred to sell it ; that the witness made the bargain with Sage for the lots ; that the defendant advised with him at the time on the subject ; that he did not recollect having talked to McClurg about it until they went to execute the papers, at which time all the parties to the original transaction were present ; but he had previously understood from the defendant that McClurg would take an interest in the property."—The defendant testified "that he went with Hurlbut to McClurg, and Hurlbut gave him a history of the lots, and said he would see what arrangement could be made with Sage for their purchase ; that Hurlbut afterwards reported to witness and McClurg the proposition of Sage for the sale, which they accepted ; that the deed of the lots was made by Sage to McClurg, because witness refused to take it and give the contract and obligations, but McClurg readily did so ; that this refusal was made in the presence of Sage, Hurlbut and McClurg, but he did not know that they all heard it ; that the understanding was that he and McClurg and Mrs. Hurlbut were each to be interested in an undivided third of the lots ; that the papers were all executed at

the same time; that he had no connection with the purchase of Mrs. Hurlbut's interest under her contract; that McClurg had told him that the property had advanced in value, and that he thought it was best to buy her out, but the witness replied that he had enough, and did not want any more of it, and McClurg then said that he would buy it himself; that this conversation was between the times when the first and second payments became due; and that McClurg afterwards told him that he had bought Mrs. Hurlbut's interest, and what he had paid for it, and desired witness to take half of it, which he refused."—The defendant also offered in evidence a judgment roll in a case then pending in the supreme court, in which one Manning was plaintiff, and McClurg and others were defendants, which was objected to by the plaintiff as irrelevant, but was admitted by the court. [The printed case does not disclose the amount or date of the judgment.] There was evidence tending to show that the defendant asked McClurg for a deed for an undivided third of the lots, before the commencement of the suit, telling him that he was prepared to meet his payment for one third of the property.—Mr. McClurg, recalled by the plaintiff, testified that he did not know of the purchase of the lots from Sage, until Mr. Hurlbut informed him of the arrangement, and when and where the papers were to be executed; that he made the arrangement for the purchase of the interest of Mrs. Hurlbut, in consequence of the request of the defendant and for their joint benefit; that the contract of Mrs. Hurlbut had never been complied with by her or by any other person; that the reason the payments were indorsed on the contract in their present form was, that the defendant insisted they should be so indorsed, and the witness wanted the money, and was unwilling to be deprived of it, in consequence of a difference at the time between himself and the defendant as to the form of the indorsements.

The plaintiff requested the court to instruct the jury as follows: "1. That the covenants in the contract as to the payments to be made by the defendant, and the deed to be given by McClurg, are mutual and independent, and the action can be maintained to recover the purchase

money without tendering a deed of the undivided half or other portion of the premises. 2. The contract with Mrs. Hurlbut related to an interest in land, and could not be transferred to McClurg except by a writing signed by the party in whom the interest was. 3. The situation of Mc-Clurg was that of a trustee for the defendant, and he could not therefore acquire by purchase any interest beyond the one half, by purchasing the outstanding contract from Mrs. Hurlbut. 4. The claim of the defendant to reduce the amount for which he is liable on the contract is, in fact, that he is released from a portion of its amount, and is void on the grounds that it is not in writing; that there was no consideration for it; and that it is not evidenced by a seal. 5. The effort of the defendant is, to change by parol a written agreement, and therefore cannot avail him. 6. The contract with Mrs. Hurlbut must have been fulfilled by her or her assigns, or the property in question belonged equally to McClurg and the defendant, and each must in that case pay equal amounts. The circuit judge gave the first instruction, but added to it the following: "But the existence of the balance of the incumbrance created by the mortgage given by McClurg to Sage for a portion of the purchase money for the lots, is a defense to the plaintiff's right to recover in this action;" and gave the second instruction asked, but added to it the following: "But McClurg, having paid the consideration for its transfer, could obtain a specific performance of her contract to assign it to him, and therefore its purchase by him was a defense to the plaintiff's right to recover more than the balance unpaid of the one-third of the purchase price of the lots." To each of these additions the plaintiff excepted. The judge refused the 3d, 4th, 5th and 6th instructions asked, and further charged the jury, "that the deed from McClurg and wife to the defendant, which had been given in evidence, was not a compliance with the contract, for the reason that the words in the printed warranty clause 'that the same are free and clear from all liens and incumbrances whatever,' had been erased." The plaintiff excepted to this charge and to the refusal to

give the the third, fourth, fifth and sixth instructions asked.
Verdict and judgment for the defendant.

*Geo. B. Judd*, for the plaintiff in error :

The covenants in the contract between the defendant and McClurg were mutual and independent, and an action lies' for the purchase money without proof of the tender of a deed. 5 Wend., 496 ; Smith's L. C., H. & W.'s Notes, 16 ; 2 Pick., 292 ; 13 id., 281. Covenants are to be construed according to the meaning of the parties and the good sense of the case. 6 Wis., 89 ; 5 Cow., 509 ; 1 Hill, 59 ; 11 Pick., 151 ; 13 id., 165, 167 ; 16 id., 227 ; 8 Mass., 162 ; 10 id., 327 ; 11 id., 302. In this case all the writings were executed at the same time. 18 N. Y., 361; 1 Coms., 186. The mortgage to Sage was given for the benefit of the defendant as well as McClurg, and the whole transaction repels the idea that the mortgage was to be paid off before the defendant was to comply with the contract on his part. The payments were to be made by the defendant at the times McClurg was to make the payments to Sage, and the construction given to the contract by the court below deprives McClurg of a portion of the means relied on to pay that mortgage. If the defendant had an equitable right to have the money agreed to be paid by him applied in discharge of that mortgage, the court had power to direct it to be so applied. R. S., 714, sec. 13 ; id., 756, sec. 26. 2. Whether McClurg's purchase of Mrs. Hurlbut's interest was for his own benefit or for that of himself and the defendant, was a question of fact for the jury. 3. McClurg was a trustee, as to the interest of the defendant in the lots, and could not, by purchase or taking a surrender of Mrs. Hurlbut's interest, acquire more than one half of it, and the other half would remain in her or go to the defendant, subject to the payment by him of one half the price paid for her interest. 9 Paige, 237, 334, 649. 4. The claim of the defendant involves the change of a written agreement by parol evidence, which is not admissible. 1 Cow., 149. 5. The court erred in charging that the deed tendered was insufficient. No objection was made by the defendant, who simply refused to accept it. The proofs show no incumbrance except the mortgage to Sage.

January Term,
1862.

DAVIDSON
v.
VAN PELT.

*Lyon & Adams*, for defendant in error:

All the instalments having become due before the demand of a deed, the covenant to pay could not be enforced while the covenant to convey was unperformed. 1 Seld., 247; 4 Conn., 3; 3 Kern., 108. The deed tendered was not such, in form, as the contract required, and would not, if unobjectionable in form, have conveyed a title to any part of the lots, free from incumbrances. 5 Seld., 535; 2 Johns., 595; 3 Dana, 318. The merger of a lesser interest in land into a greater, depends upon the intention of the parties to be affected by it. It was clearly the intention of *McClurg* that the interest he acquired from Mrs. Hurlbut should not merge in his title in fee, and his intention was acquiesced in by the defendant. 1 Watts & Serg., 485; 1 Hill. on R. Prop., 444–5; 2 Cow., 246; 6 Johns. Ch., 393; 8 Paige, 182. There was no trust created either by operation of law or the acts of the parties, and the court never presumes one except in case of absolute necessity. 1 Wis., 527; 2 id., 552; 3 id., 596.

May 15.

*By the Court*, COLE, J. It is expressly stated in the agreement between McClurg and *Van Pelt* set forth in the pleadings and evidence, that it is subject to the contract entered into between McClurg and Mrs. Hurlbut. If Mrs. Hurlbut had performed her contract according to its terms, she would have been entitled to a conveyance from McClurg of an undivided one third interest in the real estate therein mentioned. In that case *Van Pelt* would be entitled, under his contract, to a conveyance of a like interest in the same property. But if Mrs. Hurlbut should make default in her contract, and the same should become null and void, then *Van Pelt*, upon making the payments in his contract, was to have a conveyance, by a good and sufficient warranty deed, of an undivided one half of the real estate. All this is very clearly expressed and provided for in these two contracts. But it appears that Mrs. Hurlbut did not make default in her contract, but sold it for a valuable consideration to McClurg. Under these circumstances, what are the rights and obligations of *Van Pelt* under his agreement? Are they greater or other than they would have been had Mrs. Hurl-

but retained her contract and kept and performed its conditions, or sold her interest in it to some third party? We cannot see that they are. The counsel for the plaintiff in error seems to suppose that McClurg could not purchase and hold that contract for his own benefit. But what is there in his agreement with *Van Pelt* to prevent him? Suppose the property had been greatly enhanced in value, and he had purchased Mrs. Hurlbut's interest? Could *Van Pelt* have claimed that he should convey the one half to him? It seems to us not. It is contended that the situation of McClurg was that of a trustee for the defendant, and that he could not by purchase acquire any interest in the property beyond the one half, even if he bought in the outstanding contract from Mrs Hurlbut. As a matter of law the court was asked thus to charge the jury. This instruction was refused, and, as we think, very properly The court was also asked to instruct the jury that the interest of Mrs. Hurlbut under the contract could only be transferred to McClurg by writing signed by her. The court gave the instruction, but with a qualification, that McClurg, having paid a valuable consideration for that interest, could compel a specific performance or a proper assignment of it. We deem the whole instruction immaterial, for this reason: if Mrs. Hurlbut had not assigned her interest in that contract, she still held it; if she had assigned it, the court could not say, as a matter of law, that it must be for the benefit of *Van Pelt.*

We do not deem it necessary to make any further observations upon the fourth, fifth, and sixth instructions asked for on the part of the plaintiff in error, and refused. The fourth and fifth instructions go upon the idea that an effort was made by the defendant below to vary or change in some manner the terms of his contract with McClurg. Not so. We have already said that this agreement, by its terms, was subject to the contract made with Mrs. Hurlbut. And if Mrs. Hurlbut never made default in that contract—and the whole proof shows she did not—then *Van Pelt* never became entitled, under his agreement, to a conveyance of more than one third interest, upon paying that proportion of

January Term, the consideration money, and of course can only be com-
1862. pelled to take that interest in the property.

DURBIN
v.
WALDO.
The first instruction given by the court was quite as favor-
able to the plaintiff in error as the facts in the case would
warrant. Unquestionably McClurg, or his assignee, could
have recovered the different instalments upon the contract
as they became due, without alleging or proving a tender of
a proper conveyance. But we think it is clear that no action
could be maintained for further instalments after *Van Pelt*
had offered to pay all he was bound to under the contract,
and demanded such a conveyance and was refused. And it
is equally manifest that *Van Pelt* was entitled to a good and
sufficient warranty deed of an undivided one third part of
the real estate, free from all incumbrances. This is the kind
and nature of the conveyance called for by the contract.

We are therefore of the opinion that the judgment of the
circuit court must be affirmed.