In re Estate of CORNELIUS D. WOLFE, deceased, NELLIE E. WOLFE, Administratrix, Appellant, v. MARY WOLFE, Respondent.

Kansas City Court of Appeals, January 30, 1911.

1. EXECUTORS AND ADMINISTRATORS: Pension Fund: Widow's Allowance. A postal clerk, who was killed while on duty, died childless, leaving a brother, his widow (the appellant-administratrix) and his mother (the respondent). As administratrix, the widow received from the United States Government $1000 out of a certain fund, appropriated by Congress in 1904, the terms of which provided that said sum be exempt from the payment of any debts of the deceased, and payable to his legal representatives. Appellant contends that as widow, she is not only entitled to the $500 already allowed her out of this fund by judgment of the probate and circuit courts, but that she should also receive the $400 allowed a widow under the provisions of sections 106 and 107, Revised Statutes 1899 (sections 115 and 116, R. S. 1909), and also whatever money she expended in funeral expenses. Respondent contends that widow should take nothing. Held, for appellant on both contentions.

2. ———: ———. The fund set aside in said act is to be treated as a pension or gratuity given in consideration of some past service to the country.

3. ————: ————: "Legal Representatives" Construed.   In the
said Act of Congress, the words "legal representatives" mean
"executors and administrators," and not "heirs at law," since
there is nothing in the context to indicate that these words
were used in any other sense than that which they ordinarily
import.

4. ————: ————: Law of Decedent's Domicile.   It is to be pre-
sumed that Congress intended that said $1000 would be util-
ized for the benefit of those most nearly connected by the ties
of affinity and consanquinity to the deceased, and that Con-
gress had notice of the administration laws of the different
states.   Held, therefore, that Congress left the question to the
law of the domicile of the deceased by placing the $1000 in the
hands of his administrator, saving the payment of debts.

5. ————: ————: Widow's Allowance.   Although, technically
speaking, said money did not belong to the estate of the de-
ceased, at the time of his death, nevertheless, since said money
was intended first for the benefit of his wife and children, that
intention should not be frustrated by the technical objections
stated.   Therefore, under sections 105, 106 and 107, Revised
Statutes 1899 (sections 114, 115, 116, R. S 1909), appellant
should take $400 as a widow's allowance.

6. ————: ————: Funeral Expenses.   Funeral expenses are not
debts of the deceased, since they were not incurred or con-
tracted during his lifetime, but arose out of necessity, and are
made the first charge on his estate.

Appeal from Jackson Circuit Court.—*Hon. James E.
Goodrich*, Judge.

Reversed and remanded *(with directions).*

*Boyle, Guthrie, Howell & Smith* for appellant.

(1)   The fund was paid to the administratrix and
as no one appears to have a superior claim she is en-
titled to keep it.   This point is based on the conten-
tions made by counsel for Mary Wolfe.   If there is
nothing in the act to indicate who is the intended benefi-
ciary of the fund in question the court must consider
the nature of the grant, and learn the intent of the
grantor from surrounding circumstances. State ex rel.

v. Slover, 126 Mo. 652; Renfro v. Life Ins. Co., 129 S.
W. 444; Keiser v. Keiser, 13 Daly (N. Y.) 522; Bishop
v. Grand Lodge, etc., 112 N. Y. 627, 20 N. E. 562. (2)
The ordinary construction of the language of the stat-
ute creating this fund requires that the money in
question be treated as if it were a part of the estate of
the deceased, but exempt from the payment of his
debts. The allowance to the widow and the funeral
expenses were not his debts. 13 Cyc., 393; Dobbs v.
Chandler, 84 Miss. 372. (3) Mary Wolfe, by moving
to have this $1000 fund inventoried as a part of the
estate is estopped to contend that it is not a part of
the estate. Mary Wolfe contends that the administra-
trix is holding this fund as a trustee, and she is seek-
ing to enforce that trust. The probate court could
not have jurisdiction in such event, and this proceed-
ing would be a nullity. Butler v. Lawson, 72 Mo. 227;
Leeper v. Taylor, 111 Mo. 312; Tenny v. Turner, 111
Mo. App. 597.

*Reinhardt & Schisby* for respondent.

(1) The term "legal representative," must be
construed with reference to the context, the subject-
matter, and with reference to the intent of the writer.
It is often used in the sense of "heir" or "distribu-
tee." Loos v. Ins. Co., 41 Mo. 539; Wear v. Bryant,
5 Mo. 164; Emerson v. Hall, 13 Peters 408; N. Y. Ins.
Co. v. Armstrong, 117 U. S. 597; Pittel v. Ins. Co.,
86 Fed. Rep. 255; Ewing v. Jones, 130 Ind. 247; Warn-
ecka v. Lembca, 71 Ill. 91; Staples v. Lewis, 71 Conn.
288; Tarrant v. Backus, 63 Conn. 284; Casey v. Lock-
wood, 24 R. I. 72; Ins. Co. v. Scales, 101 Tenn. 628;
Thayer v. Pressey, 175 Mass. 225. (2) The act under
which the fund in question was paid is a pension act.
Donnelly v. U. S., 17 Ct. Claims 105; Emerson v. Hall,
13 Peters 408; 22 Am. and Eng. Ency. Law (2 Ed.),

p. 658; Causica v. La Coste, 20 Tex. 269; Eastland v. Lester, 15 Tex. 98; Manning v. Spry, 121 Ia. 191. (3) The absolute allowances granted a widow by statute are payable only out of the personal estate left by the deceased. Waters v. Herboth, 178 Mo. 166; Cummings v. Cummings, 51 Mo. 261-263; Bryant v. McCune's Executor, 49 Mo. 546; McFarland v. Brace's Adm., 24 Mo. 156; Burgess v. Bowles, 99 Mo. 543; See v. See, 66 Mo. App. 566. (4) The administrator does not represent the widow, as such, but only in so far as she is a distributee. Waters v. Herboth, 178 Mo. 166; Mahoney v. Nevins, 190 Mo. 360; Eans v. Eans, 79 Mo. 53.

BROADDUS, P. J.—This was a proceeding instituted in the probate court. An appeal was taken from the decision of that court to the circuit court where it was tried anew and from the judgment rendered Nellie Wolfe, administratrix, appealed.

The facts are, that the appellant, Nellie Wolfe, was the widow of Cornelius Wolfe, a postal clerk, who was killed while on duty on May 24, 1905. He died childless, and left his mother, Mary Wolfe, and Thomas Wolfe, an only brother.

In October 1905, the United States Government paid to Nellie as administratrix, the sum of $1000 out of a certain fund appropriated by Congress in 1904 to enable the Postmaster-General to pay $1000, to be exempt from the payment of the debts of the deceased, to the legal representatives of any railway postal clerk who shall be killed while on duty. Thomas Wolfe on his own behalf and for his mother filed a motion in the probate court, to require Nellie Wolfe, the administratrix, to inventory this sum of $1000 as a part of the estate of the deceased in her hands as such administratrix; which motion was sustained by the court. The administratrix filed her additional inventory, showing

the receipt by her of said sum of $1000. On the same day she filed her first annual settlement accompanied by her petition for an allowance to herself as the widow of the deceased. Thomas and his mother filed objections to the settlement, which the court disallowed. The court also held that the credits asked for by the administratrix in her settlement were proper credits, but that the only fund in her hands, the said $1000, was not subject to the payment of debts; and the court further ordered that the administratrix pay to herself as the widow of deceased, the sum of $500 out of said fund; and that she pay the remaining $500 in her hands to Mary Wolfe. Before the finding Thomas Wolfe assigned his interest in the fund to his mother.

The finding and judgment of the circuit court were the same in every respect as that of the probate court.

The appellant contends that as the widow of the deceased, she is not only entitled to the sum of $500 allowed by the judgment of the court, but that in addition thereto she is entitled to the sum of $400 as provided by sections 106 and 107, Revised Statutes 1899, and for money paid out for funeral expenses. Respondent contends on the contrary that she is not entitled to any of the fund.

The act of Congress making the provision in question for a pension to be paid to the personal representatives of postal clerks killed while on duty as such, reads as follows: "For acting clerks, in place of clerks injured while on duty, and to enable the Postmaster-General to pay the sum of $1000, which shall be exempt from the payment of debts of the deceased, to the legal representatives of any railway clerk, who shall be killed while on duty, or who being injured while on duty, shall die within one year thereafter as the result of such injury, $110,000."

The case depends upon the proper construction to

be placed upon the term "legal representatives." Respondent contends that it was used in the act of Congress as meaning heirs at law, while the appellant insists that it means administrators or executors.

It is admitted to be a well settled rule of construction that the words, "legal representatives," ordinarily means executors or administrators, where not in any way qualified by the context, but they may be shown to mean next of kin." The quotation is from Pittel v. Ins. Co., 86 Fed. 255. In other instances "heirs at law" are used instead of the words next of kin.

It is argued that as administrators represent only two classes of persons, viz.: Creditors and distributees, and in as much as Congress declared that creditors should have no share in the fund, it is not likely that it intended that the administrator should receive this pension for the purpose of performing the perfunctory duty of handing it over to the distributees, and that Congress intended it to go to the heirs. It is asserted by respondent and admitted by appellant that the fund in controversy is to be treated as a pension or gratuity and not founded on contract, but merely as payment in consideration of some past service to the country. Or as said in Manning v. Spry, 121 Iowa 191-194: "A mere bounty or gratuity given by the government in consideration or recognition of meritorious past services rendered by the pensioner, or by some kinsman or ancestor."

Many cases are cited in the brief and argument of respondent giving instances where it is held that the words personal representatives are used in the sense of next of kin or heirs at law, but as each case is predicated upon a construction of the peculiar language of the context, they serve no useful purpose as a guide in the construction of some other given case; and they are only to be considered as exemplifying the rule

that a different meaning is sometimes given to the term other than that which ordinarily follows its use. It is reasoned that because of the provision in the act, that the pension is to be exempt from the payment of the debts of the deceased, it shows that the heirs at law were meant, because if it was not to go to the payment of such debts, Congress could not have intended that it should go to the administrator or executor for the mere purpose of handing it over to the heirs.

If this contention be true, the respondent would have no case, because if the appellant was not in the legal custody of the fund, therefore the probate court had no jurisdiction of the matter and the proceedings were *coram non judice*. But we do not believe that the act is subject to such construction. It might with just as much reason be said that the exemption was inserted for the express purpose of preventing the administrator to pay debts, as he is charged with that duty under all ordinary administration proceedings. However, we are of the opinion, that the said provision is in no way explanatory of the intention of Congress and that it does not in the least tend to elucidate the question, for it is settled law that a pension fund is not subject to the payment of the debts of the deceased. It was so decided by the Supreme Court of the United States as early as 1839 in Emerson v. Hall, 13 U. S. 408.

In our opinion there is nothing in the context of the act to indicate that the words "personal representatives" were used in any other sense than that which they ordinarily import. But if we concede that the pension was to be paid to the decedent's administrator, the more difficult question arises, as who were the beneficiaries? Appellant contends that it was intended for the benefit of his immediate family, his wife or children. But this cannot be true, because the act provided for pension in all cases where the postal clerk

was killed while in the performance of his duty, without reference to whether he had a wife or children. We may assume that in many instances such was the case. It neither went to the administrator as assets nor descended to the heirs at law. In Emerson v. Hall, supra, the court in speaking of pension in general terms used the following language: "A claim having no foundation in law, but depending entirely on the generosity of the government, constitutes no basis for the action of any legal principle. It cannot be assigned: It does not go to the administrator as assets. It does not descend to the heir. And if the government, from motives of public policy, or any other consideration, shall think proper under such circumstances, to make a grant of money to the heirs of the claimant, they receive it as a gift or pure donation. A donation it is true, in reference to some meritorious act of their ancestor, but which did not constitute a matter of right against the government." The pension considered was provided for the especial benefit of certain persons mentioned in the act.

A cursory history of the laws granting pensions shows that they have been of two kinds, viz: Such as have been granted to individuals, and to individuals of a certain class. Necessarily such must be the fact. For instance Congress provided for pensions to be paid to soldiers of the war with Mexico and their widows. Pensions were granted to the Union soldiers who served in the war between the states. Some belong to one class and some to other and different classes, and in case of death, to the widow and children. And in some instances to an individual soldier who did not belong to any particular class. In all instances the law provided, that the pension should be paid to the individual if an adult, or if an infant, to his guardian. Nothing so far as to whom payment should be made was left to construction. The law was definite. There

154 App—15

were no such specifications in the act in question. If Congress had in view the immediate family of the deceased it would only have provided for a pension where there would be a wife and children or one or the other. If it was intended solely for the heirs at law, it would operate in this state in eliminating the widow if she had borne no children by the marriage. We do not for a moment entertain such a construction. We do not believe Congress intended such an injustice, or that the act should be so constructed. Congress has been, as we have shown, most considerate of the widows and children of persons who have fallen while in the discharge of duty to the country, in the way of granting pensions for their benefit.

Congress having made the appropriation for a pension in all cases where the postal clerk should be killed while in the performance of his duty, could not anticipate whether he had a living wife or children or either of them, or in failure of both, a mother, father, brothers or sisters, or what other near relatives, but did anticipate that there would be childless widows, and left the disposition of that question to the law of the domicile of the deceased by placing it in the hands of his administrator. It is to be presumed that Congress acted intelligently and with the intention that the money would be utilized for the benefit of those most nearly connected by the ties of affinity and consanguinity to the deceased. And it is to be presumed that that body had notice of the administration law of the different states of the Union. But conceding that this conclusion be true, it is still insisted that under the administration law of this state, the domicile of the deceased, the widow would be entitled to no part of the pension. Under sections, 105, 106 and 107, Revised Statutes 1899, the widow is entitled to certain allowances out of the personal estate of her deceased husband. It is urged that the allowance cannot be

made to appellant as it was not the property of the deceased at his death, and therefore is not a part of his estate. As the judgments of the probate and circuit court both made appellant an allowance of $500 which is not appealed from, we will confine our attention to appellant's contention that the court erred in not making her an allowance of $400 under section 107, and not allowing the claim for funeral expenses paid out by her.

As a matter of fact, ordinarily the widow has no exemptions except in the personal estate owned by her deceased husband existing at the time of his death. It could not be otherwise. The deceased had no interest in the fund appropriated by Congress. This must be conceded, but it does not necessarily follow that the widow's rights did not attach when it was paid into her hands as a part of his estate. If we are right in what has been said that it is the intention of the act to put the money into the hands of the administrator to be distributed according to the laws of the state, saving the payment of debts, it should be treated as such, notwithstanding, technically speaking, it did not belong to the estate at the time of the death of deceased.

As has been said, it was intended first for the benefit of the wife and children, and that intention should not be defeated by the technical objection stated. And further we hold funeral expenses are not debts of the deceased. They were not incurred or contracted during his life, but arise out of necessity and are made the first charge upon the decedent's estate. The distinction is quite clear, and has been so held in a case where by the terms of a life policy the proceeds were exempt from decedent's death. The court in the opinion says: "The consideration which supports this view and demonstrates the correctness of the chancellor's decree in allowing the administrator to pay the funeral expenses cut of the $500 insurance money is obvious."

[Dobbs v. Chandler, 84 Miss. 372, 36 So. 388.] The court did not conceive it to be a debatable question. From what has been said it follows that the judgment and the finding of the circuit court is reversed and remanded with directions to certify to the probate court to allow appellant in addition to the $500 already allowed, the sum of $400 and also to allow her the further sum of or a reasonable sum for funeral expenses not to exceed the sum of $314, the actual amount she paid. As there will be nothing left of the fund after satisfying these claims it is not necessary to pass upon the other items in the appellant's claim. All concur.