## Fields, Commonwealth's Atty., v. Nickell, Commonwealth's Atty., et al.

(Decided March 24, 1933.)

E. C. O'REAR and ALLEN PREWITT for appellant.

L. W. MORRIS, R. T. W. CALDWELL, DAVIS M. HOWERTON, JOHN W. WOOD, WATT PRICHARD and THOMAS D. TINSLEY for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This action requires a determination of the constitutionality of an act entitled:

> "An Act to change the twentieth (20th), thirty-second (32nd), and thirty-seventh (37th) Judicial Districts of Kentucky, and to provide for the holding of courts in said districts; creating a court of continuous session in the Thirty-second Judicial District and providing the procedure therein."

It was enacted by the General Assembly of Kentucky, 1932 session (chapter 146) but neither approved nor disapproved by the Governor.

As its title indicates, it rearranges, without creating a new or additional judicial district, the Twentieth, Thirty-Second and Thirty-Seventh circuit court judicial districts of Kentucky, so that the Thirty-Second judicial district is composed of Boyd county only. Its constitutional validity is challenged by the common-

wealth's attorney of the Thirty-Seventh judicial district, on the ground that the title does not fulfill the requirements of section 51 of the Constituion, and that it violates sections 59, 128, and 134 of the Constitution of Kentucky.

In order to consider and dispose of the questions presented, it is necessary to examine and construe these sections. They read as follows:

Section 51. "No law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length."

Section 59. The general assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely: Subsec. 1. "To regulate the jurisdiction, or the practice, or the circuits of the courts of justice, * * * or the rights, powers, duties or compensation of the officers thereof; but the practice in circuit courts in continuous session may, by a general law, be made different from the practice of circuit courts held in terms."

Section 128. "At its first session after the adoption of this Constitution, the general assembly, having due regard to territory, business and population, shall divide the state into a sufficient number of judicial districts to carry into effect the provisions of this Constitution concerning circuit courts. In making such apportionment no county shall be divided, and the number of said districts, excluding those in counties having a population of one hundred and fifty thousand, shall not exceed one district for each sixty thousand of the population of the entire state."

Section 134. "The judicial districts of the state shall not be changed except at the first session after an enumeration, unless upon the establishment of a new district."

In view of the conclusions we have reached, it is

not necessary to discuss section 51, other than to say the title fairly expresses the context of the act, and does not embrace more than one subject.

Considering sections 59, 128, and 134 in connection with the allegations of the petition as amended, setting out the fact that the act simply rearranges and changes certain judicial districts, without attempting to establish a new or an additional district, it is manifest that it is within the inhibition of the provisions of sections 128 and 134. Section 128 authorizes a division of the entire state into judicial districts, having due regard to territory, business, and population. Section 134 explicitly forbids changing a judicial district, except at the first session after an enumeration, unless upon the establishment of a new district. Section 59 is a limitation of the power of the General Assembly to pass a local or special act dealing with the subject of redistricting and changing or altering the circuit court judicial districts into which the state may have been divided, theretofore, by a general law. The title of the act itself and its several sections are conclusive evidence that it is a local or special act within the meaning of section 59, and not one of the character permissible thereunder. If this section permits the changing of districts at the pleasure of the General Assembly at any session thereof as has been attempted by the Act of 1932, then the provisions of secs. 128 and 134 are not only meaningless, but useless.

In 1898 (Laws 1898, c. 66), an act to amend and re-enact an act relating to and providing for a Court of Appeals, approved June 7, 1893 (Laws 1891-92-93, c. 229), was adopted by the General Assembly of Kentucky. It attempted to change the boundary of the Third appellate district by taking therefrom the county of Whitley and adding it to the Fifth appellate district, or, in ather words, it proposed to amend the fourth section of the Act of June 7, 1893, by providing that the counties in the third appellate district should remain in the district, with the exception of Whitley. It so amended the eighth section of the Act of June 7, 1893, as to exclude from the district, as it existed, the counties of Bell, Harlan, Perry, and Letcher, and in like manner amend section 6 of the Act of June 7, 1893, by adding the counties last named, and Whitley county to the Fifth appellate court district.

530

In Massengale, Clerk v. Lester, 104 Ky. 191, 46 S. W. 694, the constitutionality of the Act of March 14, 1898, was presented and determined adversely to the insistence of the present appellees. Section 116 of the Constitution substantially embraces the context of sections 128 and 134. It was our conclusion in the Massengale Case that the Legislature having divided the state into appellate court districts in 1893, it was prohibited by the Constitution from redistricting the state, except every ten years; that the Act of March 14, 1898, merely changing the lines of the Third, Fifth, and Seventh districts, was within the inhibition of the Constitution and void.

We entertain an absolute assurance that the reasons that motivated the framers of the Constitution so to write section 116 as to forbid the Legislature changing appellate districts by merely taking one or more counties out of one district and putting them in another, also actuated them to write sections 128 and 134, in language conveying the same intendment and meaning of section 116, in this respect.

The construction given by this court of section 116, and the reasons therefor, as stated in the Massengale Case, apply and control the construction of sections 128 and 134 in the present case. We can conceive of no reason for construing the latter sections differently, or giving them a different meaning to that of section 116, since the language employed in them is substantially identical, and the purpose of the sections is the same, and intended to avoid the same evil. The only difference in the purpose of the sections is sections 128 and 134 apply to circuit court judicial, and 116 to appellate, districts, which is entirely immaterial. Certain acts of the general assembly are cited and relied upon by appellees as a legislative construction of the sections of the Constitution now under consideration. An examination of the acts cited by them to sustain the argument that the sections of the Constitution have been often construed by the General Assembly, as now contended for by them, discloses that but one act rearranging and changing circuit court districts has been adopted by the General Assembly and acquiesced in since the adoption of the present Constitution, which was enacted in 1912 (Laws 1912, c. 14), and is entitled:

"An Act to create the Tenth Circuit Judicial Dis-

trict so as to include Metcalfe County in said district."

The provisions of the act merely changed one district by taking Metcalfe county out of the Twenty-Ninth and placing it in the Tenth judicial district. Such act does not fall within the category of creating a new or additional district. Brown v. Moss, 126 Ky. 833, 105 S. W. 139, 31 Ky. Law Rep. 1288. The appellees invoke the doctrine of contemporaneous legislative construction of the involved constitutional sections, but of the instances wherein changes in the circuit court judicial districts have been made by statutes similar to the one here involved, only the act of 1912 is identical. They urgently insist that the legislative constructions of the sections involved should now be adopted and applied in the determination of this case. The application of the doctrine of contemporaneous construction is more restricted as applied to the interpretation of constitutional provisions than when applied to statutory provisions, as will be seen from our two opinions in the cases of Board of Education of Louisville v. Sea, 167 Ky. 772, 181 S. W. 670, 675, and Hazelrigg v. Hazelrigg, 169 Ky. 345, 183 S. W. 933, 936. In the first case referred to, the opinion, quoting from 8 Cyc. 737, states the rule as applicable to interpretation of constitutional provisions thus:

"Legislative construction of constitutional provisions adopted and acted on with the acquiesence of the people for many years is entitled to great weight with the courts, and will not be disturbed except for manifest error."

Later in the opinion, the case of Collins v. Henderson, 11 Bush, 74, is referred to, and from which the rule is thus approvingly circumscribed:

"As stated, this rule [contemporaneous legislative construction of constitutional provisions] would not be looked to if the language being construed was plain and without ambiguity, for the manifest reason that no plainly forbidden action on behalf of the Legislature will ever be upheld as constitutional, howsoever long it might have been indulged in; but if, on account of the meaning of the language being doubtful and ambiguous, and therefore susceptible of different meanings, the legislative

department has continually from the time of the adoption of the instrument constantly pursued a particular construction of the document which is perfectly consistent with the language used, then the courts are permitted to give weight to this legislative construction.''

In the Hazelrigg opinion, in announcing the same rule, this language was employed:

''While it is a well-settled rule of constitutional construction that contemporaneous legislative constructions are not binding upon the courts, and will not be adhered to if inconsistent with the plain meaning and intention of a constitutional provision, they are nevertheless entitled to some weight, and should not be departed from unless clearly erroneous, especially when they are of long standing and have been adopted and followed for many years in the administration of the law.''

The case of Barker v. Crum, 177 Ky. 637, 198 S. W. 211, L. R. A. 1918F, 673, is both illustrative and conclusive of the topic of contemporaneous construction. The rule of construction as applicable to constitutional provisions with the restrictions upon its force and effect as so stated in those opinions will be found to be in accord with the views of all courts and text-writers when dealing with the subject, and for that reason it is unnecessary to incumber this opinion with further citations. Applying that rule with its restrictions to the facts in this case, it will be observed that in all of the instances of legislative interpretations of the two sections here involved, there is but one in which a new circuit court district was not created, and which is permissible under section 134, supra, of our Constitution, at any time. Therefore the one exception of cited legislative action by no means creates long and continuous legislative construction so as to convert that single act on the part of the Legislature into a governing rule for our adoption in this case.

As seen from the excerpts, supra, the rule is never invoked where the language to be interpreted is plain and unambiguous. In this case the language of the two involved sections of our Constitution is specific, certain, and without ambiguity. In which case the contemporaneous construction rule has no application, howsoever long indulged in by the Legislature. It is therefore

clear that the invoked rule cannot be applied in this case.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.

Whole court sitting.