No. 15,358.

BEDFORD, STATE TREASURER ET AL. *v.* SINCLAIR.

No. 15,359.

BEDFORD, STATE TREASURER ET AL. *v.* LOGAN ET AL.
(147 P. [2d] 486)

Decided March 20, 1944.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. GEORGE K. THOMAS, Assistant, for plaintiffs in error.

Mr. C. L. HARRISON, Mr. O. OTTO MOORE, for defendants in error.

Mr. MALCOLM LINDSEY, Mr. THOMAS H. GIBSON, amici curiae.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

THE over-all question presented by these two cases for review, and consolidated for disposition, has to do with the allocation of revenues arising from ad valorem levies, on malt, vinous and spirituous liquors. In case

No. 15358, a county treasurer, perplexed as to his duty in relation to the allocation of such revenues, sought a declaratory judgment in the premises. The trial court there adjudged that section 2 (b) of the old age constitutional amendment (Article XXIV) operates upon all taxes on liquor, including ad valorem taxes, but that such provision "is not self-executing." In case No. 15359, proceeding as in mandamus, it was sought to compel the identical county treasurer to segregate eighty-five per cent of the revenue arising from general ad valorem levies on liquor, and deposit the same in the state treasury to the credit of the old age pension fund. On the question of the applicability of the amendment, the latter court adjudged, as had the other; but, contrary thereto, ordered and adjudged that the amendment was self-executing, and required the county treasurer to "pay to the treasurer of the state of Colorado for deposit in the old age pension fund * * *, eighty-five per cent (85%) of the ad valorem taxes collected upon intoxicating liquor * * * and being held by him," etc.

Although only section 2 (b) of the pension amendment is directly involved, we think study of the entire article will contribute to an understanding of the issues presented. It reads as follows:

"Section 1. A fund to be known as the old age pension fund is hereby created and established in the treasury of the state of Colorado.

"Section 2. There is hereby set aside, allocated and alloted to the old age pension fund sums and money as follows:

"(a) Beginning January 1, 1937, eighty-five per cent of all net revenue accrued or accruing, received or receivable from any and all excise taxes now or hereafter levied upon sales at retail, or any other purchase transaction; together with eighty-five per cent of the net revenue derived from any excise taxes now or hereafter levied upon the storage, use or consumption of any commodity or product; together with eighty-five per cent

of all license fees imposed by the provisions of chapter 189 Session Laws of Colorado, 1935 [sections 1 to 36, both inclusive, of chapter 144 of volume 4 of the 1935 Colorado Statutes Annotated], and amendments thereto; provided, however, that no part of the revenue derived from excise taxes now or hereafter levied, for highway purposes, upon gasoline or other motor fuel, shall be made a part of said old age pension fund.

"(b) Beginning January 1, 1937, eighty-five per cent of all net revenue accrued or accruing, received or receivable from taxes of whatever kind upon all malt, vinous, or spirituous liquor, both intoxicating and nonintoxicating, and license fees connected therewith.

"(c) All unexpended money in any fund of the state of Colorado, or political subdivision thereof, as of January 1, 1937, which prior to said date has been allocated to the payment of an old age pension.

"(d) All grants in aid from the federal government for old age assistance.

"(e) All inheritance taxes and incorporation fees appropriated under chapter 145, Session Laws of Colorado, 1933 [sections 29, 30 and 31 of chapter 119 of volume 4 of the 1935 Colorado Statutes Annotated], for old age pensions.

"(f) Such other money as may be allocated to said fund by the general assembly."

██ ██ It is clear, that, while the pension amendment to the Constitution directly allocates certain excise tax levies and license fees, and, contingently, other revenues, to the old age pension fund, still, in and of its terms, such amendment does not operate to levy a tax of any kind upon any thing. Likewise, as we have held, it is not self-executing except as to the establishment of the pension fund, which "becomes the fund out of which payments will be made under the laws heretofore in force until said amendment * * * is otherwise effectuated by legislation." *In Re Interrogatories,* 99

Colo. 591, 65 P. (2d) 7; *Fairall v. Frisbee,* 104 Colo. 553, 92 P. (2d) 748.

█ In clarification of the problem it should be borne in mind that liquor is property, and while it is subject to excises and other special burdens from which property generally is free, assessors, proceeding pursuant to statute, include it in their valuations. So far as liquor constitutes merchandise, its value is ascertained and declared as provided by sections 54 and 55, chapter 142, '35 C.S.A., and if owned and possessed privately, presumably it is valued as other personal property. In any event its value enters into the sum total on which ad valorem levies are made. On valuations thus reached, the state, counties, municipalities and school districts, proceeding directly or indirectly, each such entity acting in accordance with its needs, but mindful of whatever constitutional or statutory limitations may attend, makes its levy. The funds arising from such levies operating on total property values, liquor included, are allocated to the several entities as per their respective levies, and disbursed in accordance with familiar statutes.

The contention is, and the judgment in case 15359 upheld such contention, that since by the pension amendment to the Constitution, a certain percentage of all revenue arising from taxes of *whatever kind* on liquor, shall be allocated to the old age pension fund, to the extent funds resulting from ad valorem levies by the state, the counties, municipalities and school districts, are augmented by the value of liquor included in total valuations, such percentage shall be withheld from the funds of those several legal entities and allocated to the pension fund.

█ When we reflect that the pension fund is of state origin and source, and not local, it is sound to conclude that counties, municipalities and school districts, were they to attempt to make levies in behalf of the pension fund, would be acting without authority, and their levies would be abortive. It is quite as clear, we think, that

revenues arising from their levies in the interest of activities concerning which they may proceed in that regard, cannot be diverted from their declared purposes. In a word, revenues resulting from their levies must be employed in accordance with the law of authority, or not at all.

 The pension amendment does not in terms segregate liquor values from values of other property, nor has the General Assembly clothed the state taxing authority with power to make such segregation, or upon its value to levy a tax in behalf of the pension fund, nor has such authority attempted to take such steps. It does not appear that any state levy has been made other than for a lawful and required purpose. Since the legislature has not addressed itself to the task, we think the courts should not assume responsibility for diverting legally established state funds in the interest of a particular fund, however worthy and appealing, which, as yet, has not enjoyed legislative action requiring state taxing authorities to segregate liquor from other property, and subject its value to taxation solely in behalf of the pension fund.

Lest what we have said in the above paragraph be misunderstood, we emphasize that we have not overlooked the argument that the legislature, although ever so willing, is powerless to enact a statute which would subject liquor, as property, to ad valorem levies other than those made upon other property. Also, we have not failed to note the contention that the owners of other property may not be requried to submit to the greater levies which the withdrawal of liquor values from total property values would work. Those questions, and the variations thereof, are worthy of the serious attention of all concerned, but their primary solution, as appropriately may be suggested, rests with the General Assembly. Until the law-making body shall have acted in the premises, and subsequently its power so to act

is challenged by an appropriate judicial writ, properly the courts may not be concerned therewith.

In addition to what we have said otherwise, and which is our considered judgment, we think the rule of contemporaneous construction justifies our determination. The pension amendment was adopted in 1936, and not until 1939 was case No. 15358 instituted, and case No. 15359 was filed in 1941. Before that, and there were various court proceedings in relation to the amendment and its workings in the intervening time, it was not suggested in any quarter that the pension amendment itself operated in relation to ad valorem levies. Briefly, those whose interest prompted them to claim to the extent of the amendment, initially entertained no thought of ad valorem levies. We think the evident contemporary interpretation of those actively promoting the amendment, should be accorded considerable weight. 16 C.J.S., p. 1514.

Finally, we think that while in case No. 15358 the court correctly adjudged that the pension amendment was not self-executing, still, consistently, it should have dismissed the proceeding, but did not do so. In case No. 15359, the court erred in the particular that was correctly determined in 15358, and predicated on that mistaken premise, entered an erroneous judgment.

Let it be ordered that so far as in either case there was judgment to the effect that the funds involved should be credited to the old age pension fund, there is reversal, and both causes be remanded with instructions that they be dismissed.