## No. 15,494.

### REDMON ET AL. *v.* DAVIS ET AL.

(174 P. [2d] 945)

Decided November 18, 1946.

Mr. Samuel D. Menin, for plaintiffs in error.

Mr. Gail L. Ireland, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. Duke W. Dunbar, Assistant, Mr. Donald H. Meyer, Assistant, for defendants in error.

*En Banc.*

Mr. Justice Jackson delivered the opinion of the court.

Certain old age pensioners sought to have declared unconstitutional section 10 of the Old Age Pension Act, S.L. '37, chapter 201, page 885, as amended by S.L. '39, page 461, providing funeral and burial expenses for a recipient. The trial court declined to so hold, and its judgment is here for review.

Amended section 10 of the act provides:

"On the death of the recipient reasonable funeral and burial expenses not exceeding one hundred dollars ($100.00) shall be paid by the county department if the estate of the deceased is insufficient to pay such reasonable funeral and burial expenses and the persons

legally responsible for the support of the deceased are unable to pay such reasonable funeral and burial expenses. The state department shall adopt the necessary rules and regulations to provide for the payment of funeral expenses to the mortician and the burial expenses to the cemetery.

"The ownership by the recipient of burial space in a cemetery or his purchase thereof during the time he is receiving a pension under the terms of this act shall not disqualify him from receiving a pension hereunder."

Plaintiffs contend that the above quoted legislative provision is in conflict with article XXIV of the Colorado Constitution (old age pension amendment), and more particularly sections 4 and 7 thereof. Section 4 reads as follows: "The state board of public welfare, or such other agency as may be authorized by law to administer old age pensions, shall cause all moneys deposited in the old age pension fund to be paid out to qualified pensioners, after defraying the expense of administering the said fund, within ten days following the expiration of the calendar year in which deposits are made in said fund." Section 7 reads: "All the moneys deposited in the old age pension fund shall remain inviolate for the purposes for which created, and no part thereof shall be transferred to any other fund, or used or appropriated for any other purpose." It is contended that section 10 of the act, providing for funeral expenses, violates said section 4, which provides that all moneys deposited in the old age pension fund "after defraying the expense of administering the said fund" shall be paid out to qualified pensioners; that the payment of funeral expenses is not a payment to a qualified pensioner.

It is further contended that the before-mentioned section 10 also violates that part of section 7, article XXIV of the Constitution, which provides that no part of the moneys should be transferred to any fund or used or appropriated for any other purpose than that for which the fund was created.

Plaintiffs further rely upon our decision in *Davis v. Pensioners' Protective Ass'n*, 110 Colo. 380, 135 P. (2d) 142; where, in discussing section 4 above quoted, we said:

"Section 4 of the amendment provides that at the end of the year all moneys that have been provided in the old age pension fund which have not been paid out to pensioners, 'after defraying the expense of administering the said fund,' shall be paid out to the qualified pensioners. The intended effect of this section is that the pensioners shall receive all moneys that enter into the old age pension fund, except such as are required to defray the expense of administering the fund. If five per cent of the pension fund is allocated for administration expense and only a portion of it is used, and the remainder is transferred to the emergency and contingent, or any other state fund, the pensioners will fall short, by the amount of the surplus so transferred, of receiving the amount to which they are entitled under the amendment. Furthermore, section 7 of the old age pension amendment provides that 'all the moneys deposited in the old age pension fund shall remain inviolate for the purposes for which created.' The clear import of the language following the quoted portion of said section 7 is susceptible of no other interpretation than that the *moneys deposited* in the fund shall not be transferred to any other fund or used for any purpose other than for administrative expenses and for making the payments to the old age pensioners.

\* \* \*

"In so far as money allocated from the old age pension fund is used to defray the expenses of administering relief schemes other than the old age pension plan of relief, this constitutes an unconstitutional diversion of pension funds from their constitutionally prescribed use. The trial court properly so held."

In that case, however, the question before us was whether expenses of administering relief schemes, other

than those of the old age pension plan of relief, could be allocated from the old age pension fund. We held that such would be an unlawful diversion of the fund; that there is "a clear legal duty enjoined by the Constitution to use all funds not expended for the expense of administration for the old age pension scheme of relief for the payment of pensions." That case, however, does not answer the question before us here, as to whether the payment of funeral expenses of a recipient of an old age pension is the payment of a pension.

There seems to be little pertinent authority on this point. The Attorney General cites *Purifoy, State Treasurer v. Teasley, Judge,* 188 Ala. 416, 66 So. 6. The main point in that case was the holding that a widow could be a pensioner under a state act which provided that the unexpended portion of a pension check could be applied toward the funeral expenses of the pensioner, where payment could not otherwise be provided. Plaintiffs point out that that case is unlike the instant one, in that the Alabama act provided simply that the unexpended portion of a check, already issued during the pensioner's lifetime, should be applied toward funeral expenses; whereas, in the instant case a definite payment is provided after the death of the pensioner to cover funeral and burial expenses.

In *Wolfe v. Wolfe,* 154 Mo. App. 218, 134 S.W. 33, the Court of Appeals interprets a 1904 act of Congress providing that $1,000 shall be paid to the legal representatives of any postal railway clerk killed while on duty. That case is of interest here because of the fact that the court refers to the Act of Congress as "a pension." Thus the term "pension" in that case is used to designate a lump sum to be paid after the death of the person for whose benefit the pension is created.

█ The history of legislation in this state indicates that "assistance" and "pension" have been used synonymously. Thus, in the Old Age Assistance Act, approved March 31, 1936, S.L. Second Extraordinary Session '36,

chapter 6, section 1, "assistance" is defined as "money payments to aged persons in need or payments toward the funeral expenses of such persons as provided in this act." In the Old Age Pension Act, supra, enacted by virtue of the Old Age Pension Amendment voted into effect in November 1936, an identical definition is given to the word "pension." Likewise, in Words and Phrases, vol. 31, p. 666, there appears the following: "Old age assistance. Though 'pension' ordinarily suggests idea of bounty or reward for service rendered, term might include a grant which is mere gratuity, and grant of assistance to one merely because he has reached certain age would constitute 'pension' within constitutional provision."

On principle as well as authority we are of the opinion that the payment of funeral and burial expenses, provided in amended section 10 of the act, should be considered as a payment consistent with the old age pension amendment to the Constitution. Every member of the bench and bar connected with this case might be possessed of a rugged disdain of what became of his body after this thing called "life" had departed from it, and each might have a similar disregard for any personal funeral arrangements following his death; yet it can not be said with certainty that this is the prevailing attitude now, nor in the past, of a majority of mankind. We have seen in *Vetting, Administrator v. Kefover,* 112 Colo. 53, 145 P. (2d) 879, how the minds of ancient peoples dwelt considerably on funeral arrangements and expenses. In more modern times there have developed incorporated burial societies. Another phase has been the recent growth of so-called industrial insurance in which the principal object is to guarantee a decent burial for the insured at the least expense. *Jenkins v. Metropolitan Life Ins. Co.,* 113 Colo. 68, 155 P. (2d) 772. Provision for a decent burial, therefore, seems to be one of the commonest objects of men.

Because of these things, we can not say that the legislature has gone beyond the bounds of the subject matter of an act by including a provision for a reasonable and modest sum for funeral and burial expenses in legislation which gives assistance to those who, by reason of age and financial condition, are entitled to relief. Such a payment becomes the terminal payment of the pension. Though paid after death, its payment is due because a human being has lived and, while still enjoying life, may have cared greatly whether his or her ashes should be scattered over the boundless sea, or from a mountain top, or whether the ashes or remains should be placed in some more quiet, well-remembered spot. There could be some who, because of their intense feeling, would stint themselves each month until they had saved sufficient for what they might consider an appropriate burial. To such persons the legislative amendment is in very fact an "assistance." It may also be observed that the very age of those who are the recipients of this legislative grant makes them more prone to thoughts and worries concerning the body's final resting place; so that even for those who could not, or would not save anything from the monthly pension, this grant is a very present help. Prior to the enactment of the provision for payment of funeral and burial expenses in 1937, the unclaimed body of a deceased old age pensioner could be subject to disposition under the act entitled "Dissection of Unclaimed Bodies." '35 C.S.A. article 2, chapter 109.

We do not believe that the definition of pension, as adopted by the legislature, is so far afield from the purposes of the old age pension amendment as to justify this court in declaring that section of the legislative act unconstitutional. There is no provision in the amendment itself that payments must be made to the pensioner personally, except in section 4 containing the so-called "jack pot" provision. As has often been said there is a presumption in favor of the constitutionality of a legis-

lative act. No act "will be declared invalid unless its repugnance to the fundamental law is clear and beyond reasonable doubt." *People ex rel. v. Pitcher*, 56 Colo. 343, 347, 138 Pac. 509; *People v. District Court*, 106 Colo. 89, 101 P. (2d) 26.

The rule of contemporaneous construction would also seem to be applicable here. The pension amendment was adopted in 1936 and contained no definition of the word "pension." The legislature defined the word "pension" the ensuing year, 1937, to mean: "money payments to aged persons in need or payments toward the funeral expenses of such persons as provided in this Act," and reaffirmed this definition in the sessions of 1939 and 1941. It was not until December 6, 1943, that the complaint in this case was filed. "In addition to what we have said otherwise and which is our considered judgment, we think the rule of contemporaneous construction justifies our determination." *Bedford v. Sinclair*, 112 Colo. 176, 182, 147 P. (2d) 486.

■ ■ Plaintiffs also contend that section 10 of the Old Age Pension Act is void for the reason that it violates section 21, article V of the Colorado Constitution, which provides: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

The title of the 1937 amendment of the Old Age Pension Act reads as follows: "An Act to Promote the Public Welfare by Providing for Pensions to Aged Persons in Need." Section 27 of the act provides: "Short title. This Act may be cited as the 'Forty-five Dollar Old Age Pension Act.'"

Plaintiffs contend that nowhere in the title or the short title is there any indication that there would be a provision in the act for payment of funeral expenses of deceased pensioners; that therefore section 10 must

fall as being unconstitutional. They quote from *In re Breene,* 14 Colo. 401, 24 Pac. 3, and *People v. Friederich,* 67 Colo. 69, 71, 185 Pac. 657, and cite *Shaffer & Co. v. Prosser,* 99 Colo. 335, 62 P. (2d) 1161.

In *People v. Friederich, supra,* there was a clear conflict between the title and body of the act. As we said in that case, the body of the act shows positively that it is intended for the protection of girls under eighteen years of age. The title limits its application specifically to girls eighteen years of age.

In the instant case, we are of the opinion that there is no such conflict between the body of the act and the title. The same reasons by which we conclude that section 10 of the Old Age Pension Act is not unconstitutional as being in conflict with sections 4 and 7, article XXIV of the Constitution, are applicable here in sustaining our conclusion that section 21, article V of the Constitution, is not violated. We see no conflict between a title to promote public welfare by providing for pensions to aged persons in need, and a section in the body of the act providing for funeral and burial expenses of such aged persons. We believe that section 10 is clearly germane to the subject matter set forth in the title of the act, and we have held that if a provision is clearly germane to the subject it is within the title. *Cavanaugh v. People,* 61 Colo. 292, 157 Pac. 200. We have approved the definition of "germane" in *Dahlin v. City and County of Denver,* 97 Colo. 239, 48 P. (2d) 1013, as: "Closely allied; appropriate; relevant."

■ ■ We regard the payment of the funeral and burial expenses of an old age pensioner as one of the details of the act covered by the general title. We said in *Zeigler v. People,* 109 Colo. 252, 259, 124 P. (2d) 593: "It is evident that a title cannot include all of the details of a bill. The general assembly may, within reason, make the title of an act as comprehensive as it chooses and thus cover legislation relating to many minor but associated matters. See *Gordon v. Wheatridge Dist.,* 107

Colo. 128, 109 P. (2d) 899." In *Driverless Car Co. v. Armstrong, Secretary of State,* 91 Colo. 334, 14 P. (2d) 1098, Mr. Justice Butler discusses this very point in the following words: "If legislation in the body of a statute is germane to the general subject expressed in the title; if it is relevant and appropriate to such subject, or is a necessary incident to the object of the act, as expressed in the title, it does not violate this provision of the Constitution. One test is 'whether the legislation in the body of a bill is upon matters properly connected with its subject, as expressed in its title, or proper to the more full accomplishment of the object so indicated.' In the title, particularity is neither necessary nor desirable; generality is commendable. In *Edwards v. Denver & R. G. R. Co.,* 13 Colo. 59, 65, 21 Pac. 1011, we said: 'The purpose of this constitutional provision is to prevent surprise and deception through legislation pertaining to one subject under a title relating to another. But it would be unreasonable as well as dangerous to require that each and every specific branch or subdivision of the general subject of an act be enumerated by its title. In reciting the several subordinate matters referred to, the hazard of violating that part of the provision which prohibits the treatment of more than one subject in the act is incurred; and, as a rule, it is wiser and safer not to attempt such enumeration, but to select an appropriate general title, broad enough to include all the subordinate matters considered.' "

The record in this case is wholly void of evidence. It contains simply the pleadings in the trial court and the judgment of that court dismissing the case in response to defendants' motion to dismiss. We take judicial notice of the fact that during the whole course of this litigation the full forty-five dollar monthly pension was being paid to those entitled to the old age pension, and this decision is limited to the situation where the full monthly pension of forty-five dollars is being paid.

We conclude that the trial judge was correct in

his ruling that section 10 of the Old Age Pension Act, as amended, is constitutional; that its subject matter is embraced within the title of the act; and that it is not repugnant to, or in conflict with, the provisions of the Constitutional Amendment.

The judgment is accordingly affirmed.

Mr. Justice Hilliard dissents.

Mr. Chief Justice Knous does not participate.

Mr. Justice Hilliard dissenting.

I am not in accord with the court opinion. Rather, I am persuaded to the view that, inherently, and legally as well, there is nothing in common between pension payments and burial benefits. Pensions constitute payments to pensioners, living persons. Burial benefits, upon the other hand, in the sense of the statute here, are for the use of those continuing in life as they go about burying their dead. The foregoing is not equivalent to saying that there may not be legislation, nor that it would not be desirable, carrying general appropriation features calculated to meet the burial burdens. The statutory section of defendants in error's reliance is not supported by an appropriation out of the general fund, and only by indirection, wholly void of certainty, does it make reference to the pension fund out of which the administrative board would discharge burial costs. But, assuming the statutory intent was to make drafts on the pension fund for funeral expenses involved in burying deceased pensioners, not reasonably to be deduced as I think, still, such enactment is made noneffective by the plain inhibitions of constitutional origin. "All moneys deposited in the old age pension fund," reads the Constitution, "shall be paid to those who qualify to receive a pension," not *to* other persons *for* pensioners while living, nor in their memory when deceased. Again it is stated in the organic law: "All the moneys deposited in the old age pension fund shall remain inviolate for the

purposes for which created, and no part thereof shall be transferred to any other fund, or used or appropriated for any other purpose." In short, as may not be gainsaid, the constitutional provisions involved are remarkably clear, of unmistakable import, wholly void of ambiguity, and do not constitute an absurdum. In the situation thus resulting, the general rule was well stated by Mr. Justice Burke, as follows: "Where the language used is plain, its meaning clear, and no absurdity is involved, Constitution, statute or contract, must be declared and enforced as written. There is nothing to interpret." *People ex rel. v. Hinderlider,* 98 Colo. 505, 57 P. (2d) 894. Addressing ourselves particularly to the provisions of the Constitution involved here, and speaking through our then Chief Justice Young, we said: "Furthermore, section 7 of the old age pension amendment provides that 'all moneys deposited in the old age pension fund shall remain inviolate for the purposes for which created.' The clear import of the language following the quoted portion of said section 7 is susceptible of no other interpretation than that the *moneys deposited* in the fund shall not be transferred to any other fund or used for any purpose other than for administrative expenses and for making the payments to the old age pensioners." *Davis v. Pensioners Protective Ass'n,* 110 Colo. 380, 135 P. (2d) 142. Considering the plain language of the portion of the Constitution which the legislature has undertaken to interpret contrary to its patent meaning, and the rule of construction which we have applied in such situations, stated generally in the Hinderlider case, and particularly in the Davis case, I cannot think justification attends the court opinion. Only the people, as I believe, proceeding with the solemnity that attended the adoption of the original constitutional pension amendment, and in the manner thereof, may abrogate or change it.

Likewise, I am not in agreement with the doctrine advanced by the court in its opinion to the effect that

the rule of contemporary construction may be invoked in support of the attempted legislative diversion of the moneys constitutionally raised and "deposited in the old age pension fund," no part of which, reads the Constitution, "shall be transferred to any other fund, or used or appropriated for any other purpose." Emphasizing again that the language of the constitutional amendment involved is plain and void of ambiguity, hence not subject to interpretation, I quote further from Justice Burke's opinion in *People v. Hinderlider, supra,* as follows: "Long usage can neither repeal constitutional provisions nor justify their infraction." Courts in other jurisdictions, and text writers, have discoursed on the rule of contemporary construction. I quote from some of them. "The doctrine of practical construction does not apply where there is no ambiguity." *State ex rel. v. Wiesner,* 187 Wis. 384, 204 N.W. 589. "It is the undoubted rule that such a construction [contemporaneous] may be resorted to in aid of interpretation in case of doubtful meaning. But when the language is unambiguous, its meaning cannot be modified or controlled by practice, however long continued." *Hartness v. Black,* 95 Vt. 190, 114 Atl. 44. "While a court should hesitate to declare a statute unconstitutional until clearly satisfied of its invalidity, and where it has been on the statute books for many years the hesitation should be all the greater, yet, if such act is plainly in conflict with the organic law of the state, old age cannot give it life, and when the issue of its constitutionality is properly raised, it must be declared void. We have never ruled to the contrary." *Kucker v. Sunlight Oil & Gasoline Co.,* 230 Pa. 528, 79 Atl. 747, Ann. Cas. 1912 A. 503. "It is not at all material in the present inquiry that the statute under which the defendant claims immunity has been acquiesced in for many years." *Hamann v. Heekin,* 88 Ohio St. 207, 102 N.E. 730. See, also, *Fields v. Nickell,* 248 Ky. 526, 58 S.W. (2d) 912. Legislative "interpretation should have controlling persuasiveness only in the case of doubtful

meaning of construction, a condition not here present." *State ex rel. v. Connelly,* 38 N.M. 312, 46 P. (2d) 1097, 100 A.L.R. 878. "It should be borne in mind that mere long usage and practical interpretation cannot control in the interpretation of the Constitution, unless the language is obscure and doubtful. Such usage and interpretation are entitled to no weight if the statutes are in conflict with the plain meaning of the Constitution." 11 Am. Jur. 706, §83. "A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced." Cooley's Constitutional Limitations (7th ed.) 121. "Prohibitory provisions in a constitution are usually self-executing to the extent that anything done in violation of them is void." 6 R.C.L. 62. I regard *Bedford v. Sinclair,* 112 Colo. 176, 147 P. (2d) 486, cited in the court opinion, as beside the point. There no statute was involved. On the contrary, in that case, we were called upon to interpret the constitutional pension amendment itself. Paragraph (a) of section 2 thereof provided that certain excise taxes, including imposts on liquors, should "be made a part of said old age pension fund," and paragraph (b) of the same section, seemingly, made like allocation of all "taxes of whatever kind upon" liquors. Pensioners, proceeding ably, and arguing plausibly, urged such interpretation upon us. We were not a little moved by their strong appeal; but our study, painstakingly indulged, led us to conclude that the constitutional amendment involved did not operate upon ad valorem levies. Having so stated in our opinion in that case, we added, clearly unnecessarily, that since from the beginning, all concerned, including pensioners, "entertained no thought of ad valorem levies," and that that fact "should be accorded considerable weight." In any event, and however *Bedford v. Sinclair, supra,* may be viewed, we were not concerned there, as here, with a statute couched in terms calculated to operate adversely to the plain language of the Constitution. To sustain such

a statute would be to fly in the face of all the authorities, and do violence to all reason.

I cannot think, as the court in its opinion holds, that the extent of the pension fund from time to time, or that for a considerable period all pensioners may have enjoyed the full minimum payment fixed by the Constitution, has or can have, to do with the constitutionality of the challenged enactment. A statute thus bottomed, is foundationless.

Considering the present cost of living, well within our judicial ken, and which operates to make present old age pensions inadequate, the suggestion is ventured that the General Assembly, presently to convene, may well give thought to the justice of supporting the statute involved with an appropriation from the plethoric general fund, a condition properly to be noticed.