No. 14,543.

Foster, Administrator *v.* Kragh et al.

(103 P. [2d] 480)

Decided June 3, 1940.

Mr. Herbert E. Mann, for plaintiff in error.

Mr. Albert Dakan, Mr. Thomas A. Nixon, for defendants in error.

250

*En Banc.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

THIS is an action in which plaintiff in error, as conservator of the estate of Kate Kragh, mental incompetent, sought to recover for the estate the balance due on a time certificate of deposit issued to her by defendant in error, Hereford State Bank, in the sum of $1476.67. It appears that the certificate was assigned by Mrs. Kragh to her husband, and by him to Chris Kragh, defendant in error, who in turn delivered it to the bank as security for a loan to him. The conservator, seeking to avoid these assignments, alleged that they were given without consideration, and that at the time they were made, and the certificate delivered, Mrs. Kragh was so insane and distracted in her mind as to be incapable of managing her own affairs. The bank filed a disclaimer and interpleader, asking that the court determine the rightful ownership of the funds. Defendant in error, Chris Kragh, denied the allegations of the complaint and claims the proceeds of the certificate as his own by reason of the assignment. The trial court dismissed the action at plaintiff's costs, holding: "That said defendant Chris Kragh is entitled to the possession of that certain sum of fourteen hundred and seventy-six and 67/100 ($1476.67), formerly represented by Time Certificate of Deposit No. 1031 of defendant bank, and which sum is in possession of the Registry of this Court pursuant to former Order entered herein." Conservator, seeking a reversal, brings the case here by writ of error. To clarify the issues, a somewhat detailed statement of the facts seems advisable.

In 1912 Kate Morgan and I. N. Kragh, two homesteaders in Weld county, Colorado, married, he for the fourth, and she for the first, time. He had four children by previous marriages, including Chris and Nels Kragh.

There were no children by the last marriage. Mr. and Mrs. Kragh lived on her homestead and continued their operations for the most part on a personal basis, keeping their bank accounts separate, and apparently each did not want the other to know his or her business. All witnesses agree that she was a very thrifty individual. In 1928 she conducted a sale of livestock, from which she realized an amount above $2500, which sum formed the nucleus of the time certificate of deposit here involved. In April, 1936, they went to Caruthers, California, to live with Kragh's son, Chris, who had gone there some six years before. Immediately prior to this trip they visited some of Mrs. Kragh's relatives in Cheyenne, Wyoming, who perceived a change in her mental condition, noticeable by reason of her failure to recognize people and to remember where she was. After they went to California a letter was received by these relatives from the wife of Chris Kragh, who stated that Kate's condition "did not improve or get worse." In August, 1936, they returned temporarily to Colorado and, having made some sales, opened a joint bank account in the amount of $763.93 with the Hereford Bank, Mrs. Kragh having a separate account of $100.24 at the time. Within a period of several months the husband drew out all the money in the joint account. During this last visit Clay Foster, subsequently appointed conservator of Mrs. Kragh's estate, had some business dealings with her relating to the plastering of one of the dwellings located on her land, and he noticed that her memory was very deficient in several respects, and that there was an inability on her part to understand her dealings with him. Nels Kragh, her stepson, who resides at Longmont, Colorado, testified that it seemed to him her memory had partially failed when he saw her in February, 1936, as compared with two years prior thereto. About the middle of August, 1936, she and her husband returned to live with Chris Kragh in California, and, September 8, 1936, on previous instructions from her,

the Hereford Bank renewed the former certificate and issued Time Certificate of Deposit No. 1031 in the name of Kate Kragh, which is involved here. A few days prior to November 5, 1936, there was a conference between Kate Kragh, I. N. Kragh, Chris Kragh and his wife, and a lawyer by the name of Harold M. Child, located at Fresno, California, the latter being called in to advise them. In this conference the attorney learned that they wanted to leave their properties in trust for the benefit of Kate Kragh for life, and after her death it should be divided between four of her husband's children. Mr. Child testified in his deposition that from his observation of her at that time, Mrs. Kragh appeared to be about eighty years of age, that she was of sound and disposing mind and memory, and knew the objects of her bounty. November 5, 1936, he brought out the will to be executed by I. N. Kragh. Owing to a change suggested by her relating to the beneficiaries of the remainder of the estate after her death, by eliminating two of them, the drawing of a new will was necessary, and this was made and executed by I. N. Kragh November 7, 1936, at the home of Chris Kragh. On November 5, 1936, Lawyer Child—who also acted as notary—in pursuance of the agreement, had Kate Kragh convey by deeds and assignments to I. N. Kragh all of her real estate and personal property, including an assignment of the time certificate of deposit here in question. This certificate at that time was in the possession of the Hereford Bank, on her instructions, to be held by it for safekeeping. Also on November 7, 1936, Chris Kragh, at the request of his father, mailed the assignment to the Hereford Bank. December 15, 1936, Lawyer Child, who now, the record indicates, represented Chris Kragh, addressed an inquiry to the bank, in which he stated: "I drew a Will for Mr. Kragh placing all of the property in trust, the income to be used for the support of Mrs. Kragh during her lifetime. In order to wind up the matter I desire to know the position the bank has taken in regard

to the accounts and certificates, and whether the same have been transferred to the name of I. N. Kragh pursuant to said assignment." In answer to this inquiry the bank wrote Mr. Child December 26, 1936: "There was no balance in the joint account, but the balance of $99.74 has been transferred from Kate Kragh to the joint account of I. N. Kragh and Kate Kragh, where it is subject to check by I. N. Kragh. Under this assignment, the amount of time certificate, at maturity will be paid to I. N. Kragh." February 5, 1937, I. N. Kragh made an assignment of the certificate, which was still on deposit with the Hereford Bank, to Chris Kragh. No explanation is given by Chris Kragh for this assignment, but he denies the allegation of the complaint, that it was made to him on a promise to his father that he would take care of Kate Kragh during the remainder of her life, and contends that it made him the individual owner of the certificate. Following this assignment to Chris Kragh, and on February 9, 1937, I. N. Kragh wrote the Hereford Bank requesting permission to draw $600 against the same. To this the bank, February 11, 1937, replied that under the new banking rules it was impossible for it to pay any part of the certificate until due, which would be September 8, 1937. I. N. Kragh also inquired concerning two fire insurance policies, as to changes therein, but was advised that they should be cancelled, a request for which would require the signature of Kate Kragh. February 16, 1937, I. N. Kragh wrote the bank to send the time certificate to his address. The bank on February 27, 1937, forwarded to him Time Certificate of Deposit No. 1031, together with a note in the amount of $600, for a loan, to be signed by him. March 4, 1937, the First National Bank of Caruthers, California, made certain inquiries about a transaction contemplated by I. N. Kragh. The evidence discloses that at that time I. N. Kragh attempted to make a loan with this bank on the certificate in question, but was refused. During these negotiations Kate Kragh endorsed

the certificate to said First National Bank. Because of its refusal to make the loan, it endorsed the note back to Kate Kragh. The certificate never was endorsed by I. N. Kragh. March 6, 1937, I. N. Kragh died. March 22, 1937, Chris Kragh wrote to the Hereford Bank: "Your letter, with time certificate and insurance policies, was received. My father died March 6th which was only about a day or two after receiving your letter. He was prepared and had realized for some time that he had not long to live. He made an assignment, of the account in your Bank, to me, so that the account would not be tied up in case of his death. My father also named me as the executor of his will. Mrs. Kate Kragh is still making her home with us.

"Since my father's death we have of course had additional expenses and will need about $900.00 to run us till the due date.

\* \* \*

"Will send the insurance policies later."

This was the first disclosure of the assignment by I. N. Kragh to Chris Kragh alleged to have been made February 5, 1937. March 24, 1937, the Hereford Bank sent Chris Kragh a note in the sum of $900 for his signature. In returning this note April 1, 1937, signed by him, together with the certificate, now endorsed by Kate Kragh to Chris Kragh, he stated: "We \* \* \* are all well, including Mrs. Kate Kragh." April 5, 1937, the bank remitted to Chris Kragh the sum of $899.10, this being his portion of the money loaned on the certificate. April 12, 1937, Chris Kragh filed a petition with the Superior Court of the county of Fresno, California, seeking to have Kate Kragh adjudged insane, on a diagnosis of senile dementia. April 20, 1937, she was adjudged insane, and in the order, signed by the court, it is stated, as to her financial ability, "Unable to pay anything." It appears from the record in the lunacy proceeding that the insanity attack began six weeks prior to April 12, and that the same progressed gradually. It is highly

probable that Kate Kragh was mentally incompetent before the death of I. N. Kragh, and at the time she endorsed the time certificate of deposit to Chris Kragh. Moreover, it is apparent that Chris Kragh did not disclose to the Superior Court the matter of the life estate of Kate under the alleged will, and as to the proceeds he had obtained from the Hereford Bank on the certificate. There is no disclosure in the record that the will ever was offered for probate at any time for the purpose of determining its validity, and at the time of trial, November 29, 1938, one of the beneficiaries under the will, Nels Kragh, testified that he did not know what had happened to the will; did not know whether it ever was probated, and that he had received no notice of probate at any time. July 8, 1937, plaintiff in error, at the request of relatives of Kate Kragh, was appointed by the county court of Weld county, Colorado, as conservator of her estate. September 20, 1937, the Hereford Bank returned the $900 note to Chris Kragh, marked "Paid," and charged the amount of the principal and interest to the certificate in question. The occurrences relative to the assignments, and the circumstances of the alleged will by I. N. Kragh in California, all are evidenced by depositions taken there, at which time no one representing the conservator or Kate Kragh was present.

 Error is assigned that the court did not find that the purported assignments of November 5, 1936, and February 7, 1937, failed for lack of performance or consideration. This same contention is related to an alleged error in the admission in evidence of a copy of the will of November 7, 1936, without a showing that it was properly attested, proved or shown to be admitted for probate in any court. That the certificate involved here, assigned by Kate Kragh to I. N. Kragh, was in consideration of the execution of the will on November 7, 1936, establishing a life estate for her benefit, appears from the evidence. The trial court appeared to be of the opinion that the ownership of the certificate was

not in Chris Kragh, but that he was entitled to the possession of it as trustee under the will. There is no evidence that he ever assumed that trust relationship. The assignment to him on February 5, 1937, of this certificate by his father was contrary to their agreement with Kate Kragh and the terms of that trust. He did not exercise any ownership over it until after his father's death. The loan of $900 on the certificate, so far as the Hereford Bank is concerned, is not questioned. He claims the ownership of the balance of the proceeds as an individual, not as a trustee. His failure to establish this ownership militates against possession by him unless he can take it as a trustee. On disputed evidence the trial court found that Kate Kragh was sane on November 5 and 7, 1936. The evidence indicates that nothing ever was done about the will, and that Chris Kragh has in every way attempted to obtain the proceeds of the certificate and other property under this alleged trust for his own use and benefit, and in violation of the trust set up in the will. The assignment of the certificate was predicated upon the agreement that a trust estate under the will would be created. The failure to probate it and make the trust effective in its purpose to support Kate Kragh during her lifetime, would be a failure of consideration, entitling her estate to the fund. The court committed reversible error in its admission of a copy of the will, under the circumstances, without this further proof. Chris Kragh is here claiming as owner and not as trustee; and if he is not owner, he is not entitled to possession of the funds at this time, since there is no showing that he ever was appointed as trustee under the will. That he had knowledge of the agreement upon which the assignment of the certificate is based, including the will, in which he was appointed trustee, from the time of their execution, clearly appears from the evidence. In fact, he was present during the negotiations concerning them.

■ Query: If Kate Kragh was mentally incompetent at the time she endorsed the certificate to Chris Kragh, some time after the death of his father, does that affect the issues herein? The trial court held that this was immaterial. In that it was in error. Under the circumstances, she would have no knowledge at that time that Chris Kragh was attempting to obtain this certificate for his own use and benefit. This he now frankly admits. If that is true—and it is—he was attempting in bad faith, and in violation of the agreement and the terms of the alleged will, to invade, for his personal use, the corpus of the trust fund created for Kate Kragh's support.

We think there should be a retrial, to the end that a just determination of the problems presented may be had, under such amended pleadings, if any be necessary, as the parties hereto may deem proper.

■ The court allowed counsel for interpleader attorney fees and taxed the same against the conservator. The allowance was proper, but under the circumstances should be taxed against the fund involved and now on deposit with the clerk of the court.

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE FRANCIS E. BOUCK not participating.