## No. 15,337.

FOSTER, ADMINISTRATOR *v.* KRAGH ET AL.

(148 P. [2d] 586)

Decided April 17, 1944.   Rehearing denied May 1, 1944.

Mr. HERBERT E. MANN, for plaintiff in error.

Mr. CLAY R. APPLE, Mr. L. J. WEST, Mr. W. C. RHODES, for defendants in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THIS action was brought by the plaintiff, as administrator, on behalf of the estate of Kate M. Kragh, deceased, seeking a cancellation and setting aside of deeds to lands in Weld County, Colorado, which were executed by Kate M. Kragh November 1936 — she having died August 2, 1939. By the action it is also sought to quiet title to the deeded property. The parties are before us in the same order as in the trial court, and will be referred to as they there appeared.

The grounds for the action were: 1. That the deeds were given in consideration of promises of support and care during the remainder of grantor's life; 2. that at the time of signing the deeds she was of unsound mind; 3. that because of such condition she was wrongfully prevailed upon by her husband and his son, defendant Christian Kragh, to execute the deeds; and, 4. that during the period she was confined in a California state hospital for the insane (from April 21, 1937 to August 2, 1939) the defendant, Christian Kragh, did not make provision for her care and sustenance, and by reason thereof the said deeds became and are invalid as conveyances of said land. The trial court found, "The case as made by the plaintiff's evidence does not in fact in any respect sustain the claim for relief in his complaint," and entered judgment confirming the deeds in question, dismissing plaintiff's complaint, and for costs.

Counsel for plaintiff specify error: First, the court's failure to grant the relief sought; second, in permitting defendants to resist, and in considering an attack upon the complaint of plaintiff seeking the invalidation of the deeds; third, in allowing defendants to present a collateral attack upon county records by way of defense; fourth, the court erred in failing to note, consider and hold as determinative of the issues involved the admitted promises of lifetime support and trust provisions of the will, and conveyances of land and personal property by Kate M. Kragh to Iver N. Kragh in consideration thereof; fifth, the court erred in failing to consider, hold and determine the decisions of the Supreme Court in the cases of *Foster v. Kragh,* 106 Colo. 249, 103 P. (2d) 480, and 107 Colo. 389, 113 P. (2d) 666, as well as its own decision of September 19, 1940, to be an estoppel and bar.

From the fifth specification it will be noted that this is the third case reaching this court involving the administrator of the Kate M. Kragh estate as plaintiff and Christian Kragh, alone or joined with his brother Niels,

as defendant. All grow out of the same incidents to which more detailed reference is made in the former cases, and which we now epitomize.

Iver and Kate, having been married a quarter of a century, both well along in their seventies, visit his son Chris (her stepson) in California. While there she executes the deeds on November 5, 1936 to her husband, Iver. A nearly simultaneous execution of a will by Iver which (although not introduced in evidence) appears from the testimony to have set up a trust for Kate during her lifetime, with remainder over to sons Niels and Christian. Except for a few weeks in Colorado, Mr. and Mrs. Kragh resided with Christian from April 1936, until Iver's death on March 6, 1937. Then followed the committing of Kate to the State Hospital at Stockton, California, April 20, 1937; the appointment of the plaintiff, Clay Foster, on July 8, 1937, as conservator of Kate's estate by the county court of Weld County without any notice to, or knowledge by, the Kraghs; Kate's death on August 2, 1939; subsequent appointment of plaintiff as administrator of Kate's estate; the nonpayment by him, or by any of the Kraghs, of her hospital or funeral bills; the failure to probate Iver's will in Fresno county, California, before September 22, 1939, and even then with no notice to the administrator in Colorado, and finally its attempted admission as a foreign will in Weld county on October 8, 1940. The existence of the will was known to Foster, the administrator in Colorado, on September 30, 1938, when it was offered and admitted in evidence in the district court without probate.

These facts, together with the allegation that Kate had been persuaded to make the conveyance in consideration of her being taken care of the rest of her life, gave an appearance of over-reaching, and caused a lack of assurance that fraud had not been practiced, which motivated the two former opinions of this court in holding the cases open for further proceedings. In the instant case, however, more evidence has been made available,

and the trial court has made extensive findings which negative this first-blush appearance. The findings show that when Iver and Kate first went to California they looked for a place to live, contemplating an old folks' home, but found no suitable institution, the prices of which were within their ability to pay; that they asked Christian to take them into his home, voluntarily offering to pay $35 a month. None of this sum had been paid up to the time of Iver's death. At the time of the conveyance by Kate and the execution of the will by Iver, Christian took no part other than to take his father and stepmother, at their request, to the lawyer's office, and at that time made no promise whatever with respect to the support of either Kate or Iver. He did know, in a general way, however, what had been done. The court further found that Kate Kragh was not insane or of unsound mind when she executed the deeds; that there is no suggestion that Kate Kragh's care provided by Christian was other than it should be "and the facts are that from April 1936 and continuously until the death of Iver, March 6, 1937, Christian did share his home and provide suitable support for both his father, Iver, and Kate without having received from either of them any agreed assistance for their support." After the death of Iver, Christian continued to provide a home and support for Kate, until she failed mentally and became irresponsible and unmanageable. She was then properly placed in a state hospital by the state of California, the only place available for her proper care. A few days prior to his death Iver called his wife, Kate, and Mr. and Mrs. Christian Kragh to his bedside, told Christian that he was concerned about Kate, and asked him to take care of her, and Christian "agreed to do the best he could." After Iver's death, Christian was advised by the lawyer who had drawn his father's will that there was no need of probating it immediately as there was no property to pass under it.

It further appears that the lands in Weld County con-

veyed by Kate are grazing lands, not of great value, and that the plaintiff, as conservator and later as administrator of Kate's estate, has in five years collected only $100 rent therefrom; that Christian himself had no means to provide for private hospitalization for Kate; that the certificate of deposit in the Hereford State Bank for $1,476.67, which his father had given him, was the subject matter of the suit in *Foster v. Kragh, supra* (106 Colo. 249); and of the $900 which he borrowed, with that certificate of deposit as security, $600 reimbursed him for the support and care of his parents, $40 went for taxes on the Weld county property, and the balance for his father's funeral bill and approximately $150 for transportation and other expenses for Kate. As a result of the final disposition of the case, which we remanded for retrial, but which never was retried (106 Colo. 249), the administrator of Kate's estate has collected the sum of $1,289.98, of which $1,186 has been paid to himself and his attorney as expenses of administration in that estate and also the prior conservatorship, to the exclusion of any payment therefrom toward the expenses of Kate M. Kragh or her burial or benefit; and the Weld county lands were allowed to go to tax sales.

The evidence also shows that at the time of the trial in the district court, which we reviewed by our opinion in 106 Colorado, supra, Christian was in straitened circumstances and was unable to come to Colorado and properly defend his interests, nor did he feel financially able to bear the expense of a retrial; that his appearance in the instant case was made possible through the assistance and earnings of his brother Niels.

We have carefully examined the entire record in this case and are of the opinion that the evidence supports the findings and judgment of the trial court.

As indicated in the fifth specification of error, plaintiff seems to take the position that this case is res judicata by virtue of our opinions in *Foster v. Kragh, supra,*

which appear in volumes 106 and 107 of our reports; but in *Foster v. Kragh,* reported in 106 Colorado at page 249, we remanded the cause to the district court for retrial. In the opinion in 107 Colorado 389, preliminarily to the statement of facts, we said: "The facts—for our purposes here assumed to be true—appearing from the written objections, so far as necessary to a determination of the questions presented, are as follows:" We made no finding or determination that the matters recited were in fact true. In neither case did we enter judgment inconsistent with our present holding sustaining the judgment of the trial court in the instant case.

The judgment is affirmed.