## No. 15,186.

### JENKINS *v.* METROPOLITAN LIFE INSURANCE COMPANY.
(155 P. [2d] 772)

Decided December 21, 1944. Rehearing denied January 8, 1945.

Mr. John T. Dugan, Mr. Richard Peete, Mr. S. M. True, for plaintiff in error.

Mr. Henry McAllister, Mr. John O. Rames, for defendant in error Metropolitan Life Insurance Company.

Mr. S. E. Carry, for cross-defendants in error.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

June 29, 1936, the Metropolitan Life Insurance Company issued an endowment policy to one Wade. The policy provided that if Wade made payment of premiums as required by the terms until he had attained to the age of seventy-nine years, it would pay him the sum of three hundred ninety-two dollars; and in the event of his death "prior to the date of the maturity of the endowment," the company promised that "upon receipt of proofs of the death of the insured made in the manner, to the extent and upon the blanks required herein, and upon surrender of this policy and evidence of premium payment hereunder," to pay the like sum

"to the executor or administrator of the insured, unless payment be made under the provisions of the next succeeding paragraph." That paragraph reads: "The company may make any payment or grant any non-forfeitture privilege provided herein to the insured, husband or wife, or any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, or for his or her burial, and the production of a receipt signed by any such persons, or of other proof of such payment or grant of such privilege to any of them, shall be conclusive evidence that all claims under this policy have been satisfied." A further provision of the policy is as follows: "The conditions, the privileges and concessions to policyholders, * * *, and any endorsement either printed or written by the company, on this or any of the pages following are a part of this contract as fully as if recited over the signatures hereto affixed."

December 15, 1939, insured, employing a blank form of "application for designation of beneficiary" supplied by the company for that purpose, and which provided that, "The insured may, at any time by written request, change the beneficiary," first revoking "any previous designation of beneficiary," added, "I hereby request the Metropolitan Life Insurance Company to designate Mattie Jenkins, friend, * * * as beneficiary, to receive any death benefit under such policy, subject, however, to the following provisions: * * *. If the date of issue of such policy is prior to January 1, 1937 [as here], such designation shall be subject to the provisions in the policy authorizing payment at the company's option to my executor or administrator, or to any of my relatives by blood, or connection by marriage, or to any other person appearing to said company to be equitably entitled to the same by reason of having incurred expense on my behalf or for my burial." The blank form

contained this additional provision: "No designation of a beneficiary shall be binding on the company unless endorsed on the policy by the company." January 9, 1940, the company, proceeding pursuant to the foregoing application by the insured, endorsed the policy as follows: "Subject to the provisions of the policy authorizing payment to the executor or administrator of the insured, or at the company's option to other persons, Mattie Jenkins—non-relative, has been designated beneficiary to receive death benefit only." In compliance with policy requirements in that regard, the endorsement was signed by the secretary of the company. In addition to the foregoing writings, the Denver manager of the insurance company testified that, after careful consideration, it had consented to the change of beneficiary.

The insured delivered the policy to the beneficiary so designated, who paid all premiums accruing thereafter, and upon the insured's death, which occurred August 7, 1940, she made proofs of death in required and satisfactory form, surrendered the policy to the company and demanded payment. In the meantime she had "contracted for the burial expenses and the expenses of the last illness of the said Wade," and "made all arrangements with the Douglass Undertaking Company to have Mr. Wade buried." Before consummation, however, the estranged wife of the insured learned of his death, came from Wyoming, asserted her right to have charge of the funeral (perhaps, in law not to be gainsaid), in furtherance whereof she and the Granberry Mortuary Company entered into an agreement, the terms whereof not appearing, but to the effect, generally, that that company would conduct the funeral of the deceased. Thereupon the Granberry company, first paying fifty dollars to the Douglass company for relinquishment of the body, obtained it for funeral purposes. Thus possessed of the body, T. G. Granberry of that mortuary, proceeding September 5, 1940, and al-

leging that he was a creditor of the deceased, secured appointment as administrator of the latter's estate. It is to be observed that it does not appear that Wade left any estate, or that he was ever indebted to Granberry.

Before the insurer had paid Mattie Jenkins on her demand, although it does appear that it had drawn its check to her in the amount of its liability under the policy, Mrs. Wade, proceeding as the wife of the deceased insured ("wife" appeared in the facility of payment clause as one to whom the company might make payment, but not otherwise) and Granberry, in his claimed capacity of administrator of the Wade estate, also demanded payment. The insurance company, alleging that it was perplexed and made uncertain by the several demands, and not having elected to proceed under the facility of payment clause of the policy, withheld payment and abided. September 9, 1940, Mattie Jenkins, designated as beneficiary in manner already stated, and alleging on that premise, and not otherwise, instituted an action to recover on the policy. The company, still professing perplexity, answered and interposed a cross bill of interpleader, alleging substantially as set forth above, asking that the parties claimant be required to interplead and set forth "their rights and demands as between themselves and each other, to the proceeds of the policy (and interest) now deposited in the registry" of the court, and have their respective claims settled and adjudged, the company to stand relieved from further responsibility in the premises. It also asked that its court disbursements and reasonable attorney's fees, be allowed out of the said fund, etc. The court ordered that Mrs. Wade, and Granberry as administrator, be made parties to the proceeding. For the purposes of the action, the widow, waiving her alleged claim, joined Granberry in a joint answer and cross complaint, in which they prayed recovery in behalf of Granberry as administrator. There were answers and replications, and the ultimate issue was,

whether Mattie Jenkins, claiming as beneficiary pursuant to designation made by the insured in manner stated, or Granberry, claiming as administrator of insured's estate, but not as beneficiary, was entitled to recover the fund so deposited.

The trial court found that Mattie Jenkins was entitled to "the sum of $100.00, as a trustee, for attorney fees incurred in connection with the bringing of this action, together with her costs." Also, the court found, that, for and on account of its cross bill of interpleader, the insurance company should receive twenty-five dollars as attorney's fee and five dollars for its costs incurred; in other respects it found in favor of Granberry, as administrator. Adjudging on its several findings, the court awarded thirty dollars to the insurer, one hundred dollars to Mattie Jenkins, and the remainder of the proceeds of the policy to Granberry, as administrator of the Wade estate. Subsequently, however, the court amended its findings and judgment by striking therefrom the words "as administrator of the Wade estate," and awarded to Granberry personally that which had been awarded to him as administrator. Counsel for the two interested parties seemingly agree that the adjudged allowance to Mattie Jenkins was not legally predicable. It is clear she sought no such relief. Her demand, as we have seen, was as beneficiary and for the proceeds of the policy.

The authorities are in agreement that the facility of payment clause commonly found in industrial insurance policies, as here, is permissive in character, and of which only the insurance company may make avail. Here, concededly, the insurer did not elect to act under that clause of the policy. In such situation, as we announced in *Moore v. Hendley,* 97 Colo. 258, 48 P. (2d) 808, "the provision is not involved." "The facility of payment clause, it has been held, is for the protection of the insurer and does not grant or take away a cause of action from any person." 29 Am. Jur., p. 956, §1280.

"Beyond affording the company protection in paying to another, the facility of payment clause does not affect the beneficiary's rights." 31 C.J., p. 970 [§8]. 2. "The 'facility of payment clause' need not be considered, as the company, for whose benefit the clause was inserted, did not exercise any rights thereunder when it saw fit to pay the money into the court." *Pashuck v. Metropolitan Life Insurance Co.*, 124 Penn. Superior Ct., 406. For exhaustive discussion, see *Blanchett v. Willis*, 161 S.C. 83, 159 S.E. 469.

 It is clear, therefore, that where death of insured occurs prior to maturity of the endowment, as here, and the insurer voluntarily does not discharge its obligation pursuant to the facility of payment clause, also as here, payment only is enforceable at the instance of one qualifying as beneficiary. The record considered, Who was the beneficiary? As the policy originally provided, the personal representative of the insured's estate (executor or administrator) was the beneficiary. That subsequently the insured, proceeding as was permissible, took usual and the required steps to change the beneficiary, and named Mattie Jenkins in substitution of the personal representative of his estate, is not open to question. The formal documents make that clear. Not only so, but the company's responsible representative testified that after full and careful examination of the attending circumstances, consent to change of beneficiary had been given. Neither the company, nor either party cross complaining, questions Mattie Jenkins' status of beneficiary. The company challenges neither the application of the insured to change the beneficiary nor its endorsement of consent thereto, as to substance or form. So, with the cross complainants—neither claims as beneficiary. On the contrary, their allegations are "that said insurance is, according to its terms, payable to the persons showing that they have paid said last illness and funeral bills or have made themselves responsible for the payment thereof," and, therefore, "the proceeds of

said policy" are payable other than to the beneficiary. The policy contains no such provisions. In effect, the allegations of cross complainants consist of "arguments" which were properly addressed to the insurance company in an appeal for preferment under the facility of payment clause of the policy. The company's failure to respond favorably thereto concluded them in the authority of their sole reliance. In behalf of the accomplishment of the purposes outlined in cross complainants' allegations, the company, proceeding in good faith, of primal importance, and acting by virtue of the original facility of payment clause, or its additional reserved option to pay the "executor or administrator," as expressed in the insured's application to change the beneficiary, might have paid the administrator, or any of those mentioned in the facility of payment clause, but in the absence of such action, as here, the policy only is enforceable at the instance of the designated beneficiary. That beneficiary, as we held in *Moore v. Hendley, supra,* a holding altogether reasonable and consistent with court decisions generally, is the insured's last designation thereto—Mattie Jenkins here. What is imported by the word "beneficiary" in an insurance policy? It is the right to collect the proceeds. "The company 'grants this insurance' to whom? The company 'will pay the amount due' to whom? To the person named as beneficiary, of course. The word 'beneficiary,' itself imports this. Its lexical meaning is 'The person named in a policy of insurance as the one who is to receive the proceeds or benefits accruing thereunder.' And so it is also judicially defined." *Moldovan v. John Hancock Mutual Life Insurance Co.* (Mo. App.), 124 S. W. (2d) 541. That *Moore v. Hendley, supra,* does not control here is not even suggested by counsel for the cross complainants, and counsel for the insurance company says the case is important upon the question of the disposition of the fund. The case in itself not only is important, but it announces the doctrine that prevails

in such cases. *Prudential Insurance Co. v. Young,* 14 Ind. App. 560, 43 N.E. 253; *Turner v. Prudential Insurance Co.,* 150 Kan. 899, 96 P. (2d) 641; *Pashuck v. Metropolitan Life Insurance Co., supra.* In those cases the policies provided that in case of death prior to maturity of the policies, as here, the insurer was authorized to make payment under the facility of payment clause, failing which, it was to pay to the "executor or administrator" of the insured, precisely as here. In all of them, the insured, again as here, subsequently specifically designated a named individual as beneficiary, and in every instance the beneficiary substituted for the "executor or administrator" prevailed. Specifically, in the Indiana case against the insurance company which undertook to defend on the theory that the representative of the estate of the insured held precedence over the subsequently designated beneficiary; in the Kansas case against an interpleaded administator, as here, and in the Pennsylvania case where the substituted beneficiary was interpleaded by the company in an action by an administrator, the reverse of here. Those cases, and their like, and the books abound in them, explode the theory to the effect that an "executor or administrator" named by the insured in a policy in the circumstances here, enjoys an abiding "mandatory right" which the insured may not transfer to a beneficiary subsequently named, as in this instance. In the cases it is explained that by designating his "executor or administrator" as beneficiary, the insured, in effect, has named his estate or himself, whereby a "right" in his behalf comes into potential being, over which, as with other property or choses in action of his ownership, he retains control and right of disposition. In emphasis of the doctrine announced, the authorities call attention to the obvious truth, that, while the life of an insured holds, no right vests, or has vested, in his executor or administrator, for, as one of the cases expresses it, not until death is the personal representative of one's estate "in esse."

The insured here exercised his undoubted right to substitute plaintiff in error as beneficiary, and, barring the reserved right of the company to make payment under the facility of payment clause, not exercised, his action is unchallengable. It follows that Mattie Jenkins, as we said in *Moore v. Hendley, supra,* was "entitled to the death benefit, not because he [she] was the insured's husband [wife], but because he [she] was duly substituted as beneficiary." See, also, *Prudential Insurance Co. v. Young; Turner v. Prudential Insurance Co.; Pashuck v. Metropolitan Life Insurance Company,* all cited supra. In the Pashuck case the Pennsylvania court said: "If the right to name or change the beneficiary existed in the insured [as it did there and does here], the specified beneficiary supersedes any personal representative in so far as the right to the proceeds of the policy is concerned. The executor or administrator would not therefore, be entitled to collect on the policy under such circumstances."

The right of the company to interplead and enjoy recovery of costs and attorney's fee, adjudged below, is questioned on error. Considering that the company, acting under its uncontrollable discretion in that regard, had declined to make payment pursuant to the facility of payment clause, either as it was originally drawn or as enlarged to include the personal representative of the estate of the insured, it was bound, as we are convinced, to make payment to the beneficiary named in the policy. By the insured's written designation, and with the company's formal written permission and consent thereto, plaintiff in error had become, and at the time she demanded payment was, such beneficiary. "If an insurer has permitted the insured to change the beneficiary in a policy, * * *, it is generally, if not universally, held that the insurer is not indifferent to the outcome of disputes between the claimants as to the proceeds of the policy, and consequently may not maintain interpleader between them." 30 Am. Jur., p.

222, §11. The authority from which counsel for the interpleader quoted a paragraph of the syllabus as given in the Atlantic Reporter, and on which he so much relies (*Prudential Ins. Co. v. Gleim,* 131 N.J.Eq., 215, 24 A. [2d] 511), had to do with a policy of insurance in which "no beneficiary was named," and, as we think, clearly is distinguishable. More to the point, as we conceive, is *Pouch v. Prudential Ins. Co.,* 204 N.Y. 281, 97 N.E. 731, where, on allegations comparable to those by the interpleader here, the New York court held adversely to the plea. The action taken by the company here caused plaintiff in error to undergo burdensome litigation and suffer unreasonable delay of payment. We cannot think justification attended.

Let the judgment be reversed in all particulars, with instructions to the trial court to adjudge in favor of the plaintiff in error for the proceeds of the policy as paid into the registry of the court, and for costs as against all defendants in error.

MR. JUSTICE KNOUS and MR. JUSTICE JACKSON dissent.

MR. JUSTICE JACKSON dissenting.

Here is something new under the sun. An appellate court, by way of vindicating the proposition that an insured man may change his beneficiary to some one other than his wife or executor or administrator, has bestowed upon this so-called beneficiary a largesse that the insured never intended to bestow and has left unpaid the expenses of his last illness and funeral, which the insured had every intention of having paid out of the proceeds of the insurance.

It has taken this action in the face of the following facts:

(1) An indication by the insured himself, at the time he took steps to change his beneficiary from his executor or administrator to Mattie Jenkins, that the pro-

ceeds did not go to her outright and freed of any duty or charges. The endorsement on the back of insured's application for change of beneficiary, made by the investigating agent of the company, reads: "Insured states he has no relative whom he has any confidence in and says he definitely wants this friend as Beneficiary—does not want to name his estate." This indicates a trust relationship, and Mattie Jenkins was relied upon to carry out his wishes and instructions. If he had wanted her to take outright all of the proceeds of the policy, there would have been no need for his remark that she was the only person in whom he had confidence.

(2) Subsequent to the insured's death, the acts and words of Mattie Jenkins herself show the following (a) She alleged in her complaint and testified in the subsequent trial that following the insured's death she had contracted for the funeral expenses and expenses of last illness of the insured. (b) She also testified on cross-examination as follows: "Q. You went to the Metropolitan Life Insurance Company with the express purpose of taking this money from this policy and paying for his funeral expenses? A. Sure, yes. * * * Q. You have not spent one dollar toward funeral expenses incurred in the burial of Wade, have you? A. No. Q. But you did intend to use this money that you are seeking to collect now, for that specific purpose, didn't you? A. Sure I was."

(3) The findings of the trial court included the following paragraph: "That the policy in question and being No. 35849446 upon the life of William D. Wade was a life insurance policy to be used for the burial expenses of the insured William D. Wade." There was evidence to support this finding, and there was none to disprove it. I believe it is binding on this court and cannot be ignored.

It is apparent from the foregoing recital that had not the estranged wife of Wade appeared upon the scene when she did, the funeral arrangements entered into by

Mattie Jenkins with the Douglass Undertaking Co. would have been consummated, Wade would have been buried peaceably, Jenkins would have been paid the proceeds of the policy by the Metropolitan out of which she would have paid the expenses of last illness and funeral. Wade's wishes and directions would have been respected and performed, and this case would not have arisen.

But a wife, even though she be estranged, often acts upon the theory that in matters pertaining to her husband she has rights superior to those of a stranger. The wife in this case was evidently of the opinion that she could and would set aside what the stranger had arranged, and, in respect to taking over the disposition of the body of her deceased husband she seems to have been within her rights.

For the right of the wife to the body of her deceased husband is the same as the right of the husband to that of his wife, *E. R. Butterworth & Sons v. Teale,* 54 Wash. 14, 102 Pac. 768, 18 Ann. Cas. 845, which case in turn cites numerous cases as authority. And in *O'Donnell v. Slack,* 123 Cal. 285, 55 Pac. 906, 43 L.R.A. 388, it was squarely held that the disposal of the body of a person who has not made any testamentary provision therefor cannot be taken away from his widow and given to a stranger to his blood. This right of the surviving spouse to control the burial may be waived by consent or otherwise. 15 Am. Jur. 834, §9. But there is no evidence of waiver in the instant case.

The insured's intention to have his funeral arrangements handled by his friend Jenkins have failed of fulfillment, due to circumstances over which no one but himself had any control. He could have prevented his estranged wife's interference by a number of methods, including divorce, testamentary disposition of his body, or agreement. But, not having done so, he ran the risk of having that happen which did happen and for which no one else is to blame.

When Wade originally took out his policy in the Metropolitan he had the intention that the proceeds of the policy should be used for his funeral expenses and expense of last illness, should his death occur prior to the endowment of the policy at age 79. There is in my judgment no evidence to show that Wade ever changed this intention when he took steps toward changing the beneficiary from executor or administrator to Mattie Jenkins. The trial court so found, and Mattie Jenkins' very acts and words support that finding.

We have then the case of an insured who had two objects (1) to have his expenses of last illness and funeral paid out of the proceeds of the policy; and (2) to have these funeral arrangements made by Mattie Jenkins rather than his executor or administrator or any one else. The latter object, as we have seen, has been rendered impossible of fulfillment. What the majority now say is that, as long as the second object is incapable of fulfillment, they will not carry out his first object which still can be consummated. The majority, in effect, say that as long as Mattie Jenkins was prevented from carrying out the funeral arrangements they will treat her as a beneficiary instead of a trustee, and will give her the proceeds of the policy outright as a consolation prize instead of giving her the money charged with the duty to make these post-mortem payments. In other words, they say as long as Wade's wishes can only be partially carried out, they will not carry them out at all. This would seem the height of absurdity.

This disposition incidentally runs counter to a considerable number of principles of law and equity.

It violates the rule that a man must be just before he is generous—a principle that the insured was himself attempting to follow by providing that his expenses of last illness and funeral should be paid out of the insurance and only any over-plus be left in the hands of the beneficiary of the policy.

It violates the cy pres doctrine of making the closest application possible where uncontrollable circumstances have made a trust provision incapable of being literally followed.

It violates the rule that enforces an implied or constructive trust in circumstances where it is clear that a beneficiary does not take absolutely in his own right, but takes charged with a duty to make some prescribed disposition of all or some of the property bestowed upon him.

It violates the rule that provides that in any construction of an instrument the intention of the donor shall govern.

It violates the rule that no trust shall be allowed to fail for want of a trustee. In this case the intended trustee was prevented from acting in making the funeral arrangements, but that fact should not relieve her from paying the funeral expenses; nor should it allow her to keep in her individual right what it was never intended she should keep.

It is thus apparent, even granting everything that has been said in the majority opinion by way of attempting to prove via the *Moore v. Hendley* case, cited in the majority opinion, that Mattie Jenkins has been substituted as a beneficiary under the policy in place of the executor or administrator—yet even so the first valid claim to the proceeds of the policy is that of the person who has paid the expenses of the last illness and funeral. And Mattie Jenkins is by her own words and acts estopped from denying the truth of this statement.

The trial judge realized that, however the terms of the policy were interpreted, it all came back to the proposition that the expenses of the last illness and funeral must be paid. The only question in his mind was whether the proceeds of the policy should be awarded to Granberry as administrator, or to Granberry as an individual. His first judgment was for the former. He later changed it in favor of the latter.

It is my opinion that the decree should, as a matter of fact, be awarded in favor of Granberry as administrator because I do not believe that *Moore v. Hendley, supra,* upon which the majority opinion relies, is controlling in this case. That case was not before the trial court. It was first called to the attention of this court in the petition for rehearing. The principal point at issue in that case was whether Moore, substituted *without qualification* as the designated beneficiary in the mandatory clause of an industrial policy and described therein as the husband of the insured, could recover the proceeds of the policy on the death of the insured even though the evidence disclosed that he, in fact, was not the insured's legal husband—the insured at the time of her death being married to another man from whom she had been separated but had never been divorced. Mr. Justice Bouck, speaking for the court, held in that case that the word "husband" was simply a word descriptio personae, and allowed Moore to recover. All the citations of authority were based solely on that point and the case properly appears in the digests solely under the topic of Insurance, being so digested both in the Colorado Digest and the Fourth Decennial Digest. From the syllabi appearing in the Colorado Reports and in the Pacific Reporter, there is no indication that the court considered a point of law involving a "facility of payment clause." And apparently the case has never been cited elsewhere.

The policy in the Moore case (97 Colo. 258, 48 p. [2d] 808) did, in fact, have a facility of payment clause, and the endorsement placed on it read as follows: "Subject to the provisions of the policy authorizing payment at the company's option to other persons, Thomas Moore, husband, has been designated beneficiary, to receive death benefit only." It was held that, the company not having exercised its option to make payment thereunder, no payment could be made under the facility of payment clause but that Moore was en-

titled to recover "by virtue of the endorsement which designates him as the beneficiary (thus substituted for the insured's executor or administrator)."

Again Mr. Justice Bouck said: "Moore is entitled to the death benefit, not because he was the insured's husband, but because he was duly substituted as beneficiary." In so far, therefore, as this case deals with the rights of a beneficiary named in an industrial policy having a facility of payment clause, it is in complete accord with the cases generally, and particularly the cases which counsel for plaintiff in error have principally relied upon—the rule being that, where the insurance company has failed to make an election under the facility of payment clause, the designated beneficiary named in the mandatory clause shall take.

In the instant case, however, Mattie Jenkins does not stand in the same relation as did Moore in *Moore v. Hendley, supra.* She expressly has not been substituted for the administrator as was Moore. The endorsement naming Mattie Jenkins as beneficiary specifically makes it "Subject to the provisions of the policy authorizing payment to the Executor or Administrator of the insured, or at the Company's option to other persons * * * ". Under this provision the company still retains its option to pay to other persons under the facility of payment clause, including Mattie Jenkins. If the option is not exercised it must make payment under the mandatory clause. In the instant case the administrator is expressly retained as the designated beneficiary in the mandatory clause, and the endorsement naming Mattie Jenkins as beneficiary expressly limits her rights to the provisions of the policy authorizing payment to the executor or administrator. The words "subject to" mean "subservient to", "subordinate to", or "limited, by" and such is the meaning given in *Englestein v. Mintz,* 345 Ill. 48, 177 N.E. 746 (752), which case in turn cites similar definitions in *Consolidated Coal Co. v. Peers,* 166 Ill. 361, 46 N.E. 1105, 38 L.R.A. 624, and

*Davidson v. Van Pelt,* 15 Wis. 341. "There is nothing in the use of the words 'subject to', in their ordinary use, which would even hint at the creation of affirmative rights." *Engelstein v. Mintz,* 345 Ill. 48. The Moore case, therefore, involved a substituted beneficiary. In the instant case, the endorsement contained an express provision against substitution.

I believe that the interpretation in which the majority indulges does not give full effect to the provisions of the policy. It would ignore the proviso as it relates to the administrator and have us treat Mattie Jenkins as if she had been named beneficiary unconditionally. Realizing that the administrator has not been displaced (as was done in the Moore case by the substitution of a new beneficiary) and that some recognition must be given to the administrator, counsel for plaintiff in error argue that the effect of the endorsement is to substitute Mattie Jenkins as the designated beneficiary in the mandatory clause and add the administrator as a beneficiary in the facility of payment clause. In my judgment such an interpretation is not warranted by the words of the endorsement. The endorsement not only does not say it, but, on the contrary, imports the opposite. It makes Mattie Jenkins' rights subordinate to the provisions of the policy authorizing payment to two classes of persons, and those two classes are separated by the disjunctive "or" rather than by the conjunctive "and". Mattie Jenkins is named as beneficiary "Subject to the provisions of the policy authorizing payment" (1st) "to the executor or administrator of the insured" (the designated beneficiary under the mandatory clause) "or" (2d) "at the Company's option to other persons" (those who could take under the facility of payment clause). It will be noted further that payment *"at the company's option"* relates only to "other persons" named in the facility of payment clause and not to the executor or administrator, clearly indicating that there was no intention by the endorsement to

transfer the executor or administrator into the facility of payment clause. To support the majority's interpretation the endorsement would have to read "subject to the provisions of the policy authorizing payment at the Company's option to the executor or administrator and to other persons."

What I have said in regard to the Moore case also points the distinction between the instant case and *Minuto v. Metropolitan Life Ins. Co.*, 58 R.I. 71, 191 Atl. 117, 135 A.L.R. 953, which is also relied upon in plaintiff's brief on rehearing.

Applying the rule followed in the Moore case and the other cases discussed in the majority opinion, I believe the court should hold that the company, not having exercised its option to make payment to the "other persons" named in the facility of payment clause, should pay the administrator, who is the designated beneficiary.

In order to minimize the limiting effect and wording of the endorsement placed upon the policy, the majority opinion deals at more length with the wording of the form of application for change of beneficiary in which the words executor and administrator are listed with other possible beneficiaries in the same line. It may be asked, how else could a general form read where it was to be used to cover various policies, some of which had the definite named beneficiary in the mandatory clause and the executor or administrator named in the facility of payment clause, while others had the executor or administrator in the mandatory clause and named individuals and others in the facility of payment clause.

It will have been already noted that interpleader has been approved in other jurisdictions, *Pashuck v. Metropolitan, Turner v. Prudential Insurance Co.*, and *Prudential Insurance Co. v. Gleim,* all cited in the majority opinion. As in the instant case, so in *Potter v. Young,* 193 Ark. 957, 104 S.W. (2d) 802, the insurance company paid the face of the policy into the registry of the court

and was discharged and dismissed from the case. In *Harris v. Travelers Insurance Co.* (D.C.Pa.) 40 Fed. Supp. 154, the court states the law under the federal interpleader statute, 28 U.S.C.A., §41 (26), which is similar to Rule 22, R.C.P., Colo. Counsel for plaintiff urge that section 18 of the Code of Civil Procedure applies in this case, rather than rule 22, supra. Under either, I believe the action taken by the trial court was proper and conforms with the opinion in *Foster v. Kragh,* 106 Colo. 249, 103 P. (2d) 480.

As suggested in interpleader's brief, the very result in the trial court justified the action of interpleading, the bulk of the fund being awarded to a cross-defendant. The trial court entered two different judgments. This court has now taken two absolutely conflicting positions. Not only could there have been a genuine doubt as to the relative merits of the claims of the parties involved, but there could also have been a genuine doubt as to the rule which might be adopted in this jurisdiction where, up to the present, none has been announced; and the contention of plaintiff, in petition and brief for rehearing, that *Moore v. Hendley, supra,* was controlling presents a clean issue of both parties claiming to be designated beneficiaries under the policy. I see no element of collusion by reason of Metropolitan interpleading in this case; nor do I believe the allowance of $25 counsel fee was such an amount as to encourage the action taken by interpleader.

The majority opinion now grounds its action in denying interpleader on *Pouch v. Prudential Insurance Co.,* 204 N. Y. 281, 97 N.E. 731, Ann. Cas. 1913C. 1191. But the interpretation which it adopts is rejected by a later decision of the same New York court. In *Rosen v. Equitable Life Assurance Society,* 289 N.Y. 333, 45 N.E. (2d) 899, which is largely given over to a discussion of the Pouch case, appears the following passage:

"The gist of the decision in *Pouch v. Prudential Ins. Co. (Supra),* [204 N.Y. 286, 97 N.E., p. 733, Ann. Cas.

1913C. 1191] lies in the phrase on p. 286: 'While it has never been held that it is necessary to sustain an interpleader to show that a claimant will probably succeed in establishing his claim, a mere assertion of claim by another without alleging anything whatever on which to base it is not enough.'

"In that case, as we have said, there was not only a complete failure to show that there was any substance to the claim made by the administratrix of the insured, but it appeared affirmatively that the rights of the *plaintiff* as beneficiary of the policy were not questioned. The problem there presented was whether a defendant who did not question the right of the *plaintiff* to recover a debt admittedly due from the defendant could withhold payment to the plaintiff upon the bald assertion that a claim for the debt had been made by a third party, and could obtain an order substituting the third party as defendant in his place without showing any possible basis for the claim of the interpleaded defendant. Here the problem is quite different. In the case we are now reviewing the *plaintiff's* right to recover is seriously questioned not only by the defendant insurance company but by another claimant for the same debt. Concededly the defendant could not pay the plaintiff without strong probability that it would be compelled to pay the same debt also to the other claimant."

The foregoing words are equally pertinent in pointing the difference between the Pouch case and the instant case.

Furthermore, the Pouch decision was based upon section 820 of the Code of Civil Procedure of New York, which is not in effect in this state. Is it to be inferred that the majority opinion has adopted section 820 of the Code of Civil Procedure of New York and obliterated the Colorado rules governing interpleader, as well as overruling various Colorado decisions relating to interpleader? *Mosquito Gold Mines, Inc. v. London-Butte*

*Gold Mines Co.*, 96 Colo. 536, 45 P. (2d) 175; *Mason v. LeClair Mines Co.*, 88 Colo. 381, 296 Pac. 543; *Johnson v. National Sugar Mfg. Co.*, 88 Colo. 404, 297 Pac. 995; *Foss v. First National Bank*, 3 Fed. 185, affirmed *Bissell v. Foss*, 114 U.S. 252.

Having ruled on the merits in favor of Mattie Jenkins and calling her the true beneficiary, the majority now beg the question by saying that there could have been no other disposition of the case and therefore the interpleader was an idle and frivolous thing, entirely overlooking the facts that (1) they once held otherwise, (2) as did the trial judge, and (3) a minority of the court are presently even more convinced than ever that this case is being wrongly decided.

The quotation from 30 Am. Jur., p. 222, in the majority opinion does not seem to be in point when one reads the whole paragraph which is taken from an annotation in 108 A.L.R. 272. The cases cited in the latter work, including *Midland Co. v. Bank*, 92 Colo. 558, 22 P. (2d) 860, show their inaptness to the present circumstances.

It should also be noted that this question of the right to interplead, although argued in the brief of plaintiff's counsel on rehearing, was not specified as error in the petition for rehearing.

I believe that that part of the judgment discharging Metropolitan from the case (after it had paid $403.44 into the registry of the court) and allowing it $25 for counsel fees and $5.00 costs out of the fund, should be affirmed.

For the reasons above set forth, I believe the judgment of the trial court disposing of the balance of the insurance fund paid into the registry of the court should be modified with directions to enter judgment for the full amount of the balance of the fund in favor of T. G. Granberry as administrator of the estate of William D. Wade deceased.

But this above all, whether the administrator or Jenkins is the beneficiary—and no matter which horn of that argument is taken—the expenses of the last illness and funeral should be paid. This makes Wade an honest and just man, which I believe he was. For it is my opinion that in spite of any actual or attempted change of beneficiary, he was still using his policy for the purpose for which it was originally issued. "The purpose of these policies [industrial]," as stated in *Metropolitan Life Ins. Co. v. Nelson,* 170 Ky. 674, 186 S.W. 520, L.R.A. 1916F 461, Ann. Cas. 1918B, 182, "is not to create a fund for the future support and maintenance of the insured's family, but to provide a fund with which the insured may procure care in his last sickness and a respectable burial." See also 14 Tulane Law Review 114, etc.; 32 Columbia Law Review 1185.

MR. JUSTICE KNOUS joins in this dissenting opinion.